(No. 31970.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAYMOND JENKO, Plaintiff in Error.

*Opinion filed November 27, 1951—Rehearing denied Jan. 16, 1952.*

FRANK FERLIC, JOSEPH D. GANNON, FELIX VISK, and ROBERT MONAGHAN, all of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, WILLIAM BRUMLIK, and J. V. SCHAFFENEGGER, all of Chicago, of counsel,) for the People.

Per CURIAM: Plaintiff in error, Raymond Jenko, hereinafter referred to as defendant, was indicted and tried by jury in the criminal court of Cook County for the crime of murder. A verdict was returned finding him guilty and fixing his punishment at death. He has sued out this writ of error to review the judgment, alleging that improper evidence was admitted on behalf of the State, that certain evidence for defendant was improperly excluded, and that the State's Attorney's argument to the jury was inflammatory and prejudicial.

Testimony for the State disclosed that on May 20, 1950, at about 12:30 A.M., Patricia Swartz, a girl 17 years old, left to return home after spending the evening with some girl friends. Shortly thereafter her parents and brother heard screams coming from the rear of their home. They rushed to the door and found Patricia lying at the foot of the stairs with cuts on her face, hands and body. She was taken to a hospital, where later that morning she died as a result of the wounds. About 12:45 A.M. the defendant, a young man 19 years of age, returned to his home, located four or five blocks from that of the deceased. He was carrying a bloody butcher knife, bent almost double, which he handed to his mother, and had a cut on his hand and one on his foot. He then explained he had had a fight with a Negro and had run away after stabbing him. On questioning by the State's Attorney later that morning, however, he admitted that he had killed Patricia in an attempt to rob her. He subsequently re-enacted the crime and signed another statement confirming the re-enactment. Prior to the proceedings the court appointed an attorney to represent defendant, and, at the latter's request and selection, appointed an additional lawyer, experienced in criminal trials.

At the trial, defendant's mother testified on his behalf that a month or two before the date of the crime he appeared to be nervous and behaved in a strange manner. A

psychiatrist testified that he had examined defendant and found him to be a psychopathic personality—that is, one who has a normal intellect but does not care to use it. He further testified that such persons can distinguish and choose between right and wrong and are capable of acting in accordance with their choice. Another psychiatrist testified he examined defendant on April 16, 1948, at the Psychiatric Institute of the Municipal Court; that he found him to be an adolescent maladjustment with antisocial trends; that in the opinion of the witness defendant knew the difference between right and wrong and was capable of choosing between right and wrong, but not at all times.

One Agnes Sharp, a psychologist, was also called as a witness for defendant. She testified that in October, 1948, she gave defendant a psychological examination known as the Rorschach test. After objection was made to further testimony by the witness, it was established, out of the presence of the jury, that the test is designed merely to measure the personality traits and mental ability of the subject, whereupon the court sustained the objection. Defendant did not testify before the jury, and no other evidence tending to establish a defense was introduced.

Defendant contends the court erred in admitting into evidence certain photographs taken of the deceased girl's body at the hospital and showing the various wounds inflicted upon her. At the trial, all of the pictures taken at the instance of the State were demanded by the defense and defense counsel cross-examined at length as to their admissibility, before any of the exhibits had been offered in evidence. The only objection made then was that there was no proof the pictures were those of the victim of the present crime. They were admitted subject to their being properly connected up and identified, which was later done, and they were shown to the jury. Subsequently, after their admission and at the conclusion of the State's evidence, before the court out of the pres-

ence of the jury, and again in their briefs, counsel for Jenko objected to the exhibits on the ground they were highly inflammatory and their gruesome appearance calculated to inflame and prejudice the jury. This position cannot be sustained. The fact and cause of death, the number and location of the wounds, the manner in which they were inflicted, and the wilfulness of the acts in question are all material to the offense charged. The photographs tended to establish these facts and conditions, and under such circumstances their production as evidence is a legitimate mode of proof, (*People* v. *Lazenby,* 403 Ill. 95, 103; *Janovich* v. *State,* 32 Ariz. 175, 256 Pac. 359,) and this is in accord with the majority view. (159 A.L.R. 1414.) Evidence having a natural tendency to establish the facts in controversy should be admitted. A party cannot have competent evidence excluded merely because it might arouse feelings of horror and indignation in the jury. Any testimony concerning the details of a murder or other violent crime may have such tendencies, but manifestly this could not suffice to render it incompetent. Of course, where spectacular exhibits having little probative value are offered for the principal purpose of arousing prejudicial emotions they should be promptly excluded. But questions relating to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the trial judge, and the exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant. Such is not the case here.

Further objection is made to the exhibits on the ground that linear measurements were pictured opposite the respective wounds, and that no proof of their accuracy was introduced. The measurements complained of on the pictures are a two-inch rule which tend to accurately show the conditions existing rather than to overemphasize the severity of the wounds. The objection was not raised in

the trial court, however, and cannot be considered for the first time on review. *People* v. *Rejno,* 402 Ill. 84.

In his next assignment of error defendant urges that the witness Agnes Sharp should have been permitted to testify as an expert concerning his mental condition. There was no error in excluding the testimony. The witness was a psychologist, and proposed to give her opinion as to defendant's mental ability at a time twenty months before the date of the offense. The Rorschach or "ink blot" test is a personality test, to determine perception, sense of values and the interests of the individual, and incidentally measures the mental ability of the subject. All the witness could identify, if permitted to testify to the results of the test, would be that the defendant was a psychopathic person. This would be merely cumulative, and, even if this is conceded to be so, it would not be a defense to the crime charged. Clearly, such testimony could have no legitimate bearing upon the issues. Criminal responsibility depends upon whether the accused knows the difference between right and wrong, can understand his relation to others, and has knowledge of the nature of his act so as to perceive its consequences to himself and others. (*People* v. *Pugh,* 409 Ill. 584, September Term, 1951.) A subnormal mentality is not a defense to a charge of crime unless the accused is by reason thereof unable to distinguish between right and wrong with respect to the particular act in question. *People* v. *Marquis,* 344 Ill. 261.

It is also contended the court erred in admitting evidence introduced by the State in rebuttal to show defendant was sane. The object of this complaint is the testimony of one Vladimir Urse, a psychiatrist, that he had examined defendant in the county jail and that in his opinion defendant was sane, knew the difference between right and wrong, could choose between the two and could act on the choice. To support his contention defendant makes the argument that, "As to the defense, other than

the suggestion that the defendant might have been an irresponsible person, and that at a date two years earlier, there is no evidence offered by the defense showing that he did not know the difference between right and wrong or if he did, that he could not act in accordance with such choice." It is further argued in defendant's brief that, "Inasmuch as his insanity as of the date of the commission of the offense was not in issue, nor was his insanity at the time of trial in issue, the court, by permitting this rebuttal evidence, raised collateral issues that were no part of the case." But defendant introduced the testimony of psychiatrists, to which reference has already been made. The only defense upon which this evidence could have any bearing is one of insanity, and, while it fell short of satisfying the requirements of that defense, it was sufficient to warrant the prosecution in coming forward with proof of sanity. Under the law of this State, the presumption of sanity is overcome by evidence tending to prove insanity, which is sufficient to raise a reasonable doubt. When that is done the prosecution is then required to prove the sanity of the accused beyond a reasonable doubt, as a necessary element of the crime charged. (*People* v. *Skeoch,* 408 Ill. 276.) The State's Attorney should not be held to a duty of determining in the course of a trial the precise point at which the presumption of sanity is overcome before he can safely proceed with evidence in rebuttal. Moreover, it is not shown how the testimony in question could have prejudiced defendant. The contention is clearly unfounded, especially in view of the instructions on insanity offered on behalf of defendant, and does not merit further consideration.

Defendant finally complains that the State's Attorney made prejudicial remarks to the jury. In the course of his argument the State's Attorney stated, "You remember, ladies and gentlemen, when you were chosen as jurors, you saw the defendant talking to his counsel all the time:

'I want this one, I don't want that one'?" On objection to the remark, the court directed the jury to disregard that portion referring to what the defendant might have said to his lawyers. The contention is now advanced that the State's Attorney's remark constituted a comment on the demeanor of defendant; that it was tantamount to commenting upon the failure of defendant to testify; and that it violated the constitutional provision protecting every person from being compelled in a criminal case to give evidence against himself. While the reference made by the State's Attorney is subject to criticism, it does not have the effect asserted by defendant. It is clear that the remark was not a material factor in defendant's conviction, and that he could not have been injured by it. Such slight errors, not affecting the merits or justice of the decision, will not justify a reversal. As we observed in *Siebert* v. *People,* 143 Ill. 571, "It is impossible to lay down any general rule in regard to what shall or shall not be said in an argument to the jury, but unless it is apparent that defendants have been injured by improper remarks, the judgment should not be reversed on that ground, alone."

The crime disclosed by this record is one of the most callous and brutal imaginable, committed without any semblance of provocation or excuse. The proof of defendant's guilt was overwhelming and conclusive, and was not denied at the trial by any witness produced on behalf of defendant. Nor was any other substantial defense interposed. Indeed, defendant acknowledges in his brief that there was no defense, and submits that "for all particular purposes, the only issue involved was a matter of punishment." He was represented at the trial by two attorneys, at least one of whom was experienced in criminal matters, and the trial judge took every precaution to protect his rights and accord him a fair trial.

Under the undisputed evidence the jury could not have reasonably returned any verdict other than the present one,

486

and, as no prejudicial error has been shown, the judgment of the criminal court of Cook County is affirmed. It is the judgment of this court that the original sentence of the criminal court of Cook County shall be executed on the twenty-fifth day of January, 1952, and the clerk of this court is directed to enter an order to that effect, and furnish a certified copy of such order to the sheriff of Cook County at least ten days prior to the date of execution.

*Judgment affirmed.*