**People of the State of Illinois, Plaintiff-Appellee, v. Stanley Gajda, Defendant-Appellant.**

**Gen. No. 51,661.**

First District, First Division.

September 25, 1967.

Rehearing denied October 11, 1967.

Jack G. Stein, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Stanley Gajda, was charged with murder and manslaughter in a two-count indictment. The manslaughter count charged that the defendant was guilty of voluntary manslaughter "in that he, acting under a sudden and intense passion, resulting from serious provocation by Jerome Brzezinski, shot and killed the said Jerome Brzezinski with a gun, without lawful justification, in violation of Chapter 38, Section 9-2, of the Illinois Revised Statutes 1963." The jury returned a verdict of guilty on the voluntary manslaughter count, and Gajda was sentenced to serve a minimum of one year and a maximum of fifteen years in the State Penitentiary.

The defendant contends that the conviction should be reversed because the trial judge gave a manslaughter instruction to the jury, and submitted a manslaughter verdict in a case in which only evidence of deliberate murder had been introduced by the state, and only evidence of self-defense had been introduced by the defendant. The defendant argues that no evidence was introduced upon which the jury could find the defendant guilty of manslaughter, therefore, the manslaughter instruction was improper and constituted error. The defendant asserts that either the defendant was guilty of murder, or he was not guilty of murder, by reason of his claim of self-defense. No other verdict, he says, was possible.

It is the general rule that where the evidence admits of only one of two possible conclusions, one of which is murder and the other being not guilty of murder by reason of a justifiable homicide in self-defense, the giving of instructions and form of verdict as to manslaughter is error, when these instructions are given at the request of the state. People v. Jones, 384 Ill 407, 51 NE2d 543 (1943). The court in Jones found that such

an error will require reversal of the judgment if the jury finds the accused guilty of manslaughter. It is also the rule in homicide cases that if there is evidence in the record which if believed by the jury would reduce the crime to manslaughter, an instruction defining the crime must be given. People v. Harris, 8 Ill2d 431, 134 NE2d 315 (1956). It is necessary to examine the evidence in some detail as it was presented in the court below, because of the applicability of the foregoing legal principles to the facts of the instant case. The basic question in the examination of the evidence will be whether or not there was sufficient evidence presented to warrant the jury finding the defendant guilty of manslaughter.

The evidence presented by the State shows that at 4:00 or 4:30 p. m. on January 15, 1965, the defendant, Gajda, and his wife, were tending bar at the Shady Lane Tavern, which was owned by the defendant. According to the testimony of the State's witness, Ray Garich, the others present in the tavern at this time were the deceased, Jerome Brzezinski, Edward Blackburn, and others not identified. Garich testified that he was present in the tavern from 4:00 or 4:30 p. m. to 11:00 p. m., at which time the shooting occurred. Garich further testified that the defendant told him on several separate occasions, while they were alone in the back room, not to talk to the deceased because "He is a spy." The witness testified that he, the defendant, the deceased, and Blackburn were all drinking during this time. At 11 o'clock Garich, the deceased, and Blackburn were sitting at the bar, and the defendant was tending bar. Garich testified that at this time a discussion was going on between the four of them. The discussion became heated. "Mr. Brzezinski (the deceased) stood up, put his hands on the bar and he said, 'you're a little man. I can buy you and sell you.' With that, Mr. Gajda pulled out a gun and shot him."

Edward Blackburn testified that he was also present from 4:00 o'clock until the time of the fatal shooting. He substantiated Garich's testimony that all of the parties present were drinking during this period of time. Blackburn further testified that the defendant accused the deceased "of being a moocher and cheap and he didn't have any money." Blackburn stated that by 11:00 o'clock the defendant and the deceased had been arguing for some time. "It was getting kind of heated and, I don't know, one thing led to another, then finally Jerry (the deceased) placed his two hands on the bar and he leaned forward. He said, 'you're a little man. I could buy you and sell you.' And with that, he got shot." Blackburn related that the defendant, who was standing behind the bar, got his gun from his right pocket, and fired four shots at the deceased.

Joseph Mirus, a police officer, testified that he and a fellow officer arrived at the tavern at about 11:05 p. m. He took a gun out of the defendant's pocket and found one live round and four spent shells inside of the weapon. Gajda admitted the gun belonged to him. Mirus testified that the defendant told him that "He was behind the bar and an argument broke out with him and the victim and the victim started throwing bottles and glasses and he got up on the bar to come over to attack him, and he shot him." Mirus observed that the defendant apparently had been engaged in heavy drinking.

Joseph Genovese, a police patrolman, called as a witness on behalf of the defendant, said he arrived at the tavern at about 11:00 p. m. He observed that the defendant had been cut, and was bleeding about his left arm and also from his nose. The defendant was taken to a hospital, but he wasn't hospitalized.

The defendant, Stanley Gajda, took the stand in his own behalf and testified that he tended the bar of his tavern on the day of the shooting, starting at about 4:00 p. m. Gajda stated that at 11:00 o'clock the deceased, to

320

whom he had served beer earlier in the evening, threw a bottle at him, swore at him, and ran behind the bar after him and struck him with a bottle. Gajda claimed that his arm was cut in the fracas and that many stitches were required to close the wound. He testified further that he was frightened that the deceased meant to kill him, so he got a gun from behind the bar and shot him. The defendant denied that he had said anything to the deceased before the bottle was thrown. He also denied that he had told Garich that the deceased was a spy.

■■ The sole ground relied on for reversal is that the trial court erred in submitting instructions dealing with voluntary manslaughter, and also in submitting a manslaughter verdict to the jury. Defendant does not object to the form or substance of the manslaughter instruction itself, but rather to the fact that a manslaughter instruction was given at all. He urges that the evidence summarized above can admit reasonably of only one of two possible conclusions. Either the defendant has committed murder or he is not guilty of murder by virtue of a valid claim of self-defense. Defendant contends that the evidence introduced at trial will not admit of a manslaughter verdict. However, murder and manslaughter are said to be kindred crimes. U. S. v. Wilberger, 18 US 76, 97. The unlawful killing of a human being is the major factor that characterizes both crimes. At common law every indictment for murder includes, by implication, a count for manslaughter as well. A jury may find the accused guilty of manslaughter in an indictment solely for murder, even though the evidence would not support a verdict of guilty on the murder indictment. People v. Lewis, 375 Ill 330, 31 NE2d 795, cert den 314 US 628.

■ We find that there was sufficient evidence introduced upon which the jury might find the defendant guilty of manslaughter. People v. Harris, 8 Ill2d 431, 434, 134 NE2d 315. The evidence discloses conflicting stories

321

as to what transpired at the time of the shooting; it is for the jury to resolve these conflicting facts under proper instructions. The record shows that for over six hours prior to the fatal shooting an argument of increasing intensity was taking place between the defendant proprietor and the deceased customer. Both the defendant and the deceased consumed substantial amounts of liquor during this time. Garich testified that during the time leading up to the shooting the defendant accused the deceased of being a cheapskate. He also accused him of not buying his share of the beer. Blackburn also testified that the defendant accused the deceased of being a moocher and cheap. Garich testified further that at 11:00 o'clock the deceased stood up, put his hands on the bar and said, "You're a little man. I can buy you and sell you." Immediately the defendant pulled out a gun and shot the deceased. Blackburn's testimony essentially substantiated Garich's account of what transpired at the time of the shooting.

The testimony of the defendant conflicted sharply with the accounts of Garich and Blackburn. Whereas they had testified that the defendant had fired from behind the bar at the deceased who was sitting at the customer's side of the bar, without being physically attacked, Gajda testified that the deceased came around behind the bar after him; that he was under a serious physical attack prior to the shooting. He testified that he believed he was in danger of being killed. "He hit me with the bottle in the arm . . . I scared he is going to kill me. He really want to kill me . . . , I shot one shot in the air. That man no stop. He is still want to kill me. He really want to kill me, this man, and I don't have a chance . . . He still coming. I don't know how many times I shot but I was so scared. He just want to kill me."

▇ Mere words, of course, do not constitute sufficient provocation to reduce a killing from murder to man-

slaughter. However, the evidence introduced at trial discloses that a great deal more than mere words transpired between the deceased and the defendant prior to the fatal shooting. The State introduced evidence of a "quarrel of some duration." See People v. Stepheny, 76 Ill App2d 131, 134, 221 NE2d 798. The defendant himself introduced evidence of a violent physical attack upon his person by the deceased; that there was ". . . an attempt . . . made by the deceased to inflict a personal injury." See People v. Harris, 8 Ill2d 431, 434, 134 NE2d 315. Finally, the defendant introduced evidence contradicting the State's witnesses to the effect that he had acted in self-defense. However, the jury could choose to disbelieve him and find that he had not entertained a "reasonable" belief in the need to wield deadly force to protect himself. Such a conclusion by the jury would justify a finding of manslaughter. See Ill Rev Stats c 38 § 9–2(b).

 Defendant attempts to draw a distinction between self-defense to a murder charge and provocation that reduces a killing from murder to manslaughter. He asserts that provocation in manslaughter results from an imminent attack that creates fear, whereas self-defense results from an attack that is no longer imminent, but is taking place in actuality. This distinction is not supported by the law. An attack that the law will recognize as producing sufficient provocation to reduce a murder charge to manslaughter may be either imminent or present; an attack that may create a reasonable belief in the defendant that the use of deadly force is necessary in self-defense may be either imminent or present. A murder indictment automatically raises the question of whether the defendant's claimed belief in self-defense is reasonable or not, because a murder indictment automatically raises counts of all of the statutory forms of manslaughter. See People v. Millet, 60 Ill App2d 22, 208

NE2d 670, and Ill Rev Stats c 38 § 9–2(b). The question as to the reasonableness of the defendant's beliefs in the need for the use of deadly force in self-defense was properly submitted to the jury in the evidence, and the jury was instructed as to this issue in accordance with the law.

The defendant's reliance upon the decision in People v. Spinks, 72 Ill App2d 46, 219 NE2d 65, is misplaced. In that case neither was there evidence introduced of defendant's belief in the necessity for self-defense, nor was there substantial evidence of provocation by the deceased. The situation in the case at bar is entirely different. Here there is evidence of both provocation and of the need for self-defense. The evidence readily admits of a finding of manslaughter, and for this reason the judge's instructions on this subject were correct.

■■■■■ It is the general rule that where there is any evidence in the record upon which the jury could find the defendant guilty of manslaughter, rather than murder, that finding will not be disturbed upon review. People v. Tripp, 392 Ill 351, 64 NE2d 498. People v. Sain, 384 Ill 394, 51 NE2d 557. The facts in the instant case introduced into evidence could reasonably support differing interpretations to find defendant guilty of murder or of the manslaughter count in the indictment. Since the evidence clearly would support a finding of manslaughter by the jury, the judge in giving instructions as to that crime did not commit error; indeed, failure to give manslaughter instructions and a manslaughter verdict under the circumstances would have been error. People v. Harris, 8 Ill2d 431, 434, 134 NE2d 315. The judgment is therefore affirmed.

Affirmed.

MURPHY, P. J. and ADESKO, J., concur.