THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON PEELER, Defendant-Appellant.

(No. 58014;

First District (4th Division)—June 13, 1973.

942

James J. Doherty, Public Defender, of Chicago, (Robert M. Motta and John T. Moran, Jr., Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis, Thomas A. Mauet, and John C. O'Rourke, Jr., Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Leon Peeler, brings this appeal from a judgment of the Circuit Court of Cook County finding him guilty of voluntary manslaughter and sentencing him to not less than nine nor more than fifteen years in the penitentiary. Three issues are presented to this court for review: whether the defendant was proven guilty beyond a reasonable doubt, whether the trial court erred in giving a jury instruction on voluntary manslaughter based upon intense passion and whether the trial court's exclusion of evidence of the decedent's reputation for carrying a deadly weapon prejudicially limited the defense.

The facts are as follows. On January 1, 1970, Charles Robinson, the deceased, and his wife, went to an apartment hotel located at 924 West Lawrence Avenue in the City of Chicago to visit Robinson's brother. As they entered the building they met Eugene Wells, his wife and the defendant, Leon Peeler. After a short conversation in the hallway, Mrs. Robinson left the group. As she was leaving she heard her husband ask the defendant, "why did he do him like he did last night?" or words to that effect. She returned approximately five minutes later. Her husband was not in the hallway and she went to the defendant's apartment to look for him. When she entered she saw the defendant standing over her husband with a knife. Her husband was lying on the floor next to the bed covered with blood. The defendant raised the knife to strike Robinson again, but stopped when Mrs. Robinson screamed.

Eugene Wells testified that Robinson said to the defendant, "I don't like the way you treated me the other night", and a scuffle broke out

between the two men. Robinson struck the defendant two or three times, knocked him down, then grabbed him and pushed him into his own apartment. Wells heard the sounds of fighting inside the apartment and heard Mrs. Robinson scream, but did not see the actual stabbing.

The defendant testified that Robinson knocked him into his apartment, demanded ten dollars and then began choking him. As they struggled, he picked up a knife from beside his sink and stabbed Robinson several times in the face and neck. He admitted stabbing Robinson, but stated that he was afraid of Robinson from past encounters and acted in self-defense.

The coroner's physician testified that Robinson died of stab wounds and had been stabbed eight times.

■■ We turn our attention first to whether the defendant was proven guilty beyond a reasonable doubt. The indictment charged the defendant with murder. At trial he testified that he stabbed Robinson only after he had been attacked without provocation and was being strangled and therefore that he acted in self-defense. In this court he argues that under the facts presented he was either guilty of murder or not guilty by reason of self-defense and that the jury's "compromise" verdict finding him guilty of voluntary manslaughter indicates that it did not believe beyond a reasonable doubt that he was guilty of murder.

This argument is without merit. It is well established in Illinois that an indictment for murder involves all other grades of homicide which the evidence tends to establish and that an indictment charging murder includes a charge of manslaughter. (*People v. Speed*, 52 Ill.2d 141, 145; *People v. Lewis*, 375 Ill.330, 335.) Where the offense charged in the indictment includes within it another offense of lower degree, the defendant may be convicted of the lower offense even though the evidence fails as to the offense of higher degree. (*People v. Lewis*, 375 Ill. 330, 334.) Therefore the fact that the jury may not have believed the defendant guilty beyond a reasonable doubt of murder did not preclude it from finding him guilty of the lesser included offense of voluntary manslaughter.

Section 9—2 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 9—2) provides that one who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles set forth in article 7 of the Code, but this belief is unreasonable. Article 7 deals with the justifiable use of force and provides in part that a person is justified in the use of force against another if he reasonably believes that such conduct is necessary to defend himself. The use of force intended to cause death

or great bodily harm is limited to situations in which the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm. Ill. Rev. Stat. 1969, ch. 38, par. 7—1.

In the present case there is ample evidence from which the jury could have found that the defendant stabbed Robinson in the belief that such action was necessary to prevent his own death or serious injury, but that this belief was unreasonable. It was undisputed, for example, that Robinson was not armed at the time of the incident and had given the defendant no cause to believe that he was. The coroner's pathologist testified that Robinson was five feet ten inches in height and weighed 160 pounds, indicating that he was of average build. Both witnesses testified that Robinson was lying down when they entered the room and that the defendant had the knife raised to stab him again. The bed was covered with blood. The pathologist testified that Robinson was stabbed eight times. From this it is apparent that the defendant inflicted at least some of the wounds after he had succeeded in preventing Robinson from strangling him. This conclusion is inexorable even if the defendant's testimony is taken as true. We are satisfied, therefore, that the defendant was proven guilty beyond a reasonable doubt and we so hold.

■■■ Next we turn to whether the court erred in giving a jury instruction on voluntary manslaughter based upon intense passion. Much of what we have said with respect to the defendant's contention that he was not proven guilty beyond a reasonable doubt applies to this contention as well. As we stated above, an indictment for murder includes all other grades of homicide which the evidence tends to establish. The Criminal Code provides that a person who kills an individual without lawful justification commits voluntary manslaughter if, at the time of the killing, he is acting under a sudden and intense passion resulting from serious provocation by the individual killed. (Ill. Rev. Stat. 1969, ch. 38, par. 9—2.) In all criminal cases the jury should be fully instructed on any theory which they might find to be true from the evidence and where there is any evidence in the record which, if believed, would justify a finding of manslaughter such an instruction should be given. *People v. Izzo,* 14 Ill.2d 203; *People v. Jones,* 384 Ill. 407, 412.

In the present case we believe that there is sufficient evidence that the jury would have been justified in finding that the defendant acted in an intense passion brought on by provocation. It is undisputed that Robinson provoked the defendant both by his statement, "I don't like the way you treated me last night", and by his actions. It was also undisputed that Robinson was stabbed eight times. The testimony of the pathologist indicates that the wounds were inflicted in a frenzied, random fashion. At least some of the wounds were inflicted after the necessity for self-

defense had passed and after Robinson had ceased to resist. Therefore voluntary manslaughter was an issue in the case and it was proper for the court to have given an instruction defining it. Indeed if the court had not given such an instruction it might have committed reversible error. See *People v. Canada*, 26 Ill.2d 491.

The defendant calls our attention to several cases in which it was held to be reversible error to give an instruction on voluntary manslaughter when the defense to a murder charge is the justifiable use of force. These cases are distinguishable from the one presently before us in that, unlike the present case, they involved situations in which the evidence admitted of only one of two conclusions; that the defendant was guilty of murder or that he was innocent. Thus, while we recognize the rule stated in these cases, we conclude that it is not applicable here.

Finally we consider whether the court's exclusion of evidence of Robinson's reputation for carrying a deadly weapon prejudicially limited the defense. Although the defendant states this to be the issue, our examination of the record reveals that the court allowed the defendant to present testimony which established that Robinson was feared in the community and had a reputation for carrying a gun. It was only when the witness attempted to testify to specific instances in which Robinson had been armed and had exhibited his violent nature that the court sustained the State's objections. In doing this the court was entirely proper.

In a prosecution for homicide where the defendant relies upon self-defense and there is evidence which, if believed by the jury, would justify a finding that the decedent was the aggressor, evidence of his violent disposition and prior threats or conduct *directed toward the defendant* is admissible. The reason for this is that such evidence tends to show the circumstances confronting the defendant, the extent of his apparent danger and the motive by which he was influenced. (*People v. Davis*, 29 Ill.2d 127, 130.) The wisdom of such a rule is apparent; however, it is inapplicable to the present case.

In the present case the testimony concerning Robinson's reputation in the neighborhood as a violent man was given by Eugene Wells, the defense witness. Wells testified that Robinson "was pretty well feared around the neighborhood." The defendant's counsel then asked, "And for what reason?" This question was objected to, and the court sustained the objection. The defendant's counsel made several attempts to rephrase the question, but each was unsuccessful. Clearly the testimony which counsel sought to elicit did not relate to specific acts by Robinson directed against the defendant, but to the incidents which formed the basis of Wells' opinion that Robinson was feared in the neighborhood. It is

fundamental that such evidence is inadmissible. See *People v. Popovich*, 295 Ill. 491, 496; *People v. Simpson*, 76 Ill.App.2d 441, 447.

The defendant also argues that the court prejudicially limited his own testimony with respect to prior encounters with Robinson. Specifically he objects to the following exchange:

"Q. [Counsel] Had Mr. Peeler [sic: Mr. Robinson] ever done anything to you, personally, prior to that?

A. [Defendant] Well, down—he pulled—

The Court: Just a moment, counsel, that question calls for a yes or no answer, please.

Q. [Counsel] Yes or no?

A. [Defendant] Yes."

The defendant contends that this exclusion was prejudicial in that it deprived the jury of facts necessary to reach an informed verdict. The record reveals, however, that immediately following the colloquy set forth above, the defendant's counsel rephrased his question, and the defendant was permitted to testify freely about a prior occasion upon which Robinson allegedly drew a gun on a crowd of men which included the defendant. In view of this we are at a loss to see how the court's action could have prejudiced the defendant, and we find his contention to be wholly destitute of merit.

For the foregoing reasons the judgment of the circuit court is affirmed.

 On May 9, 1973, while this case was still pending on appeal, the defendant filed a motion in this court for modification of his sentence in accordance with the new Unified Code of Corrections, which became effective on January 1, 1973. (Ill. Rev. Stat., 1973 Supp., ch. 38, par. 1001—1—1 *et seq.*) The Code provides that sentences shall be under its provisions in any case not finally adjudicated on its effective date. (Ill. Rev. Stat., 1973 Supp., ch. 38, par. 1008—2—4.) The defendant has directed our attention to several recent appellate court cases in which it was held that a cause pending on appeal had not reached final adjudication within the meaning of the statute and in which the appellate court modified the sentence passed by the trial court. (*People v. Mize*, 9 Ill.App.3d 647, 650; *People v. Lobb*, 9 Ill.App.3d 650, 653; *People v. Caritinos*, 9 Ill.App.3d 782, 783.) After reviewing these decisions, we agree that the defendant is entitled to a modification of his sentence.

██ Voluntary manslaughter has been made a Class 2 felony. (Ill. Rev. Stat., 1973 Supp., ch. 38, par. 9—2.) For a Class 2 felony the minimum term is to be one year unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum. In any event, the minimum term is to be no greater than one-third of the maximum. (Ill. Rev. Stat., 1973 Supp., ch. 38, par. 1005—8—1.) In the present case the court set the minimum

term at nine years and the maximum at fifteen years, thereby setting a greater minimum than the statute allows. Therefore, the sentence is modified as follows: the minimum term shall be not less than five years and the maximum not more than, fifteen years.

With the sentence modified the judgment of the Circuit Court of Cook County is affirmed. The cause is remanded to the circuit court with directions to issue an amended *mittimus* reflecting the foregoing modifications.

Affirmed as modified. Remanded with directions.

ADESKO and DIERINGER, JJ., concur.