THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUSSELL ELWELL, Defendant-Appellant.

Third District   No. 75-88

Opinion filed May 3, 1977.—Rehearing denied May 26, 1977.

Edward Petka, State's Attorney, of Joliet (Richard Balough, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Russell Elwell, the defendant, was charged by a two-count indictment returned by a grand jury of Will County with the offense of having murdered Anthony Darby and with the offense of attempted murder by stabbing of Roy Harmon. The defendant was first tried for these offenses in November 1973; however, a mistrial resulted when the jury was unable to reach a verdict. Upon retrial the defendant was acquitted on the attempt murder charge but convicted for the offense of murder. The trial court imposed a sentence of imprisonment on the defendant of not less than 14 nor more than 17 years.

A brief resume of the factual situation which resulted in the defendant's

conviction is as follows. During the early evening hours of April 22, 1973, the defendant, in the company of Michael DeChant, went to the Lincoln Lodge located in the village of Frankfort, Will County. While there they played pool and drank some beer. Later the defendant danced with Betty Warren, who was the girl friend of Arthur Darby. Darby became concerned when he noticed that the defendant had placed his hands on his girl friend's posterior. An argument ensued between the defendant and Darby. This argument was of short duration but the defendant claimed that during the course of it Darby jammed or poked a pool cue into his side. During the course of the defendant's trial no one could corroborate the defendant's testimony as to the occurrence of this incident. After the brief argument the defendant left the Lincoln Lodge after stating that he was going home to get his .38. The defendant, however, did not go home but requested his companion, Michael DeChant, to drive him through the village of Frankfort, where he sought to locate some allies who would assist him in fighting Arthur Darby. Being unsuccessful in this quest the defendant then went to the home of his father and was successful in enlisting the aid of this gentleman and an uncle. The trio then returned to the Lincoln Lodge where the defendant challenged Arthur Darby by calling him a "punk" and ordering him to step outside.

No purpose would be served by reciting in detail the actions of the combatants in the melee which followed, but when it terminated it was discovered that Roy Harmon and Arthur Darby had both been stabbed, allegedly by the defendant. Later that night Darby died in a hospital and the cause of his death was a stab wound to the heart. Roy Harmon recovered from his wound. No knife or other instrument capable of being used for "stabbing" was ever found. No one was able to testify during the defendant's trial that they ever saw a weapon in the defendant's hands or elsewhere; however, there was evidence adduced that only the defendant came into physical contact with the deceased victim Darby during the melee.

The defendant in this appeal raises a number of issues for review and we first direct our attention to his contention that reversible error was committed when the trial court admitted into evidence vials of blood of the deceased victim and the other victim, Harmon.

During the course of the trial over the objection of the defendant the State was allowed to offer testimony of the taking and preservation of the blood of the victims Darby and Harmon. The trial court permitted a criminologist to testify as to various tests he performed on the blood of the victims. At the close of the State's case the court admitted into evidence vials of blood taken from the victims and later over objection of

the defense the court permitted the vial containing the blood of the deceased victim to go into the jury room during the jury's deliberation.

The State claims that the admission of the vials of blood in evidence was proper since the blood served two purposes, first to show the nature and extent of the injury and secondly, to assist the jury in determining how the offense was committed.

■■ We believe that the first purpose, to-wit, "to show the nature and extent of the injury," is a fallacious argument. The jurors were well aware that they were serving in a murder trial, in fact they ultimately found the defendant guilty of murder. A victim was dead so how greater could the injury have been. As to the second purpose propounded by the State as justification for the blood vials being admitted into evidence, we totally fail to comprehend how such evidence would assist a jury in determining how the offense was committed. It is clear from the record that there was medical testimony that established the victim Darby's death was caused by being stabbed in the heart.

The State cites a number of cases in support of its contention that the vials of blood had probative value and should have been admitted as evidence. *People v. Doyle* (1966), 76 Ill. App. 2d 302, 222 N.E.2d 205, does not support the State's contention since the defendant was being tried on charges of aggravated battery and of inflicting great bodily harm. The reviewing court permitted details of a wound to be introduced in evidence since the nature and seriousness of the injury inflicted was at issue. No such issue was present in the instant case. *People v. Swaney* (1971), 2 Ill. App. 3d 857, 276 N.E.2d 346, also concerned a question as to "great bodily harm" so testimony as to the severity of the victim's wounds was permitted. Bloodstained clothing and a bedspread were admitted in evidence in the case of *People v. Arnold* (1911), 248 Ill. 169, 93 N.E. 786. Such admission was permitted to prove that a forcible rape had been permitted. The sole case cited by the State which related to the introduction in evidence of vials of blood is *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590, however, in this case the defense made no objection to the admission of the vials.

■■■ In the instant case the jury began its deliberations on a Tuesday evening and did not reach a verdict until the following Friday morning. Throughout its entire deliberations the jury had before it a vial of the deceased victim's blood. We fail to find that such exhibit had any relevancy or materiality to any issue raised by the trial and which was to be determined by the jury. Such an exhibit could only be prejudicial to the defendant by tending to arouse and influence the emotions of the jurors. (See *People v. Nickolopoulos* (1962), 25 Ill. 2d 451, 185 N.E.2d 209, where our supreme court held that prejudicial error had been committed in permitting this introduction of evidence as to blood on the victim's

clothing, the floor and a stretcher.) Also, in *People v. Arnold* (1911), 248 Ill. 169, 93 N.E. 786, it was held error in a rape prosecution to allow an exhibition to the jury of bloodstained clothing where the victim began hemorrhaging sometime after the alleged rape since the articles failed to prove anything but the uncontroverted occurrence of the hemorrhage. In *Arnold* our supreme court stated:

> "They [the bloody clothing] were not the instruments of any crime, and had no tendency to prove any fact, except that the hemorrhage occurred, which was not in controversy. The exhibition was necessarily prejudicial to the defendant, and would create a prejudice which it would be impossible to meet and overcome. It should not have been permitted."

We fail to find any justification for the exhibition to the jury of a vial of the decedent victim's blood. Such an exhibit was not necessary to assist the jury in determining any issue. The exhibit had no probative value or materiality to the offenses with which the defendant was charged. The hourly and daily viewing of such an exhibit by the jury could only create a prejudicial effect which served to prevent the defendant from receiving a fair and impartial trial, hence it is necessary that this cause be reversed and remanded for a new trial.

The defendant in this appeal has assigned a number of other issues for review but we do not deem it necessary to consider them since we do not anticipate that the same problems will recur in the retrial of this case.

For the reasons set forth the judgment of conviction of the Circuit Court of Will County and the sentence imposed thereon is reversed and this case is remanded for a new trial.

Reversed and remanded.

ALLOY, P. J., and STOUDER, J., concur.