THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALPHONSE T. LANDRY, Defendant-Appellant.

Third District   No. 76-183

Opinion filed November 7, 1977.

STENGEL, P. J., concurring in part and dissenting in part.

Ronald L. Hamm and Ronald Hanna, both of Hamm, Hanna & O'Brien, of Peoria, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal was initiated by the defendant, Alphonse T. Landry. Even though the defendant was charged with murder, a jury found him guilty of involuntary manslaughter, and the defendant appeals from the judgment of conviction entered on the verdict and the imposition of a sentence of a term of imprisonment of not less than 3 1/3 nor more than 10 years.

The incident underlying the charges against the defendant is a barroom fight in which the defendant admittedly struck Donald Braden, resulting in the death of Braden. The defendant testified that he was provoked by Braden and a companion of Braden. He also testified that he did not remember hitting the victim more than once, but admitted it was possible he did so. The initial blow put Braden flat on his back on the floor. Landry and some others unsuccessfully tried to revive the victim, but it appears he actually died before the ambulance arrived.

There is conflicting evidence from other witnesses as to the provocation. Several witnesses also testified that the defendant landed between three and six punches to Braden's head after he was floored by the first of the defendant's punches. However many blows were struck, they were made with the defendant's bare fists and were landed in and about the head of Braden.

A pathologist testified that there was no visible injury to the back of Braden's head and that Braden's external head injuries were not severe. However, the cause of death was described as a subdural hematoma, with the hemorrhaging being extensive at the base of the brain, resulting from, at least, four blows to the head. This testimony was accompanied by the presentation of autopsic photographs which were admitted into evidence over a defense objection.

■■ ■ The defendant contends that the trial court committed reversible error by instructing the jury on involuntary manslaughter when there was no evidence of recklessness produced at the trial. Manslaughter is an included offense in a murder charge (*People v. Peeler* (1st Dist. 1973), 12 Ill. App. 3d 940, 299 N.E.2d 382), and it is the function of the jury to determine whether the defendant is guilty of the offense charged or of a lesser included offense. (*People v. Thompson* (2d Dist. 1976), 35 Ill. App. 3d 773, 342 N.E.2d 445.) Where there is evidence in the record which, if believed by the jury, would warrant a finding of guilty of manslaughter rather than murder, it is reversible error for a trial court to refuse to give a manslaughter instruction. (*People v. Canada* (1962), 26 Ill.

2d 491, 187 N.E.2d 243.) Where, as here, the evidence is conflicting and could support either a theory of self-defense or a finding of manslaughter, the trial court should instruct the jury on both theories (see *People v. Gajda* (1st Dist. 1967), 87 Ill. App. 2d 316, 232 N.E.2d 49), but the jury is not required to believe the testimony and evidence warranting the giving of a self-defense instruction merely because such an instruction was given. (See, *e.g., People v. Gajda* (1st Dist. 1967), 87 Ill. App. 2d 316, 232 N.E.2d 49.) Nor is the defendant entitled to have the jury instructed only as to murder where evidence which would support a conviction of involuntary manslaughter exists. See *People v. Guthrie* (4th Dist. 1970), 123 Ill. App. 2d 407, 258 N.E.2d 802.

■■ In our view, there was sufficient evidence of recklessness to warrant the trial court giving an involuntary manslaughter instruction to the jury. Therefore, the trial court did not commit reversible error by instructing the jury on involuntary manslaughter.

■■ On the other hand, we believe the trial court did commit reversible error by allowing the autopsic photographs to be exhibited and to be admitted into evidence. When a photograph is offered which has a tendency to result in the possible prejudice of the jury, its admission lies in the sound discretion of the trial court. (*People v. Lefler* (1967), 38 Ill.2d 216, 230 N.E.2d 827.) Generally, despite their gruesomeness and prejudicial effect on the jury, material and relevant photographs are admissible, as where they tend to prove the cause of death, the number and location of the wounds, the manner in which they were inflicted, the amount of force used or the wilfulness of the act in question. (*People v. Owens* (1976), 65 Ill. 2d 83, 357 N.E.2d 465; *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771; *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208; *People v. Ford* (1968), 39 Ill. 2d 318, 235 N.E.2d 576; *People v. Jenko* (1951), 410 Ill. 478, 102 N.E.2d 783; *People v. Dee* (1st Dist. 1975), 26 Ill. App. 3d 691, 325 N.E.2d 336.) However, generally it is only a gruesome crime that warrants the admission of gruesome photographs. *People v. Dee* (1st Dist. 1975), 26 Ill. App. 3d 691, 325 N.E.2d 336.

Photographs of a deceased victim, taken during the autopsy, are highly prejudicial because they tend to arouse the passions of the jury. (See this court's observations in *People v. Elwell* (1977), 48 Ill. App. 3d 628, 630-31, 362 N.E.2d 830, 832.) The photographs were not necessary in the instant case to aid the jury in understanding the pathologist's testimony. If deemed necessary at all, diagrams and drawings could have illustrated the pathologist's testimony without arousing the jury's prejudice with grisly pictures, not of external injury inflicted, but of the autopsy. The record indicates the pathologist adequately established, through his lengthy and detailed testimony, the cause of death and the amount of force used so that the use of the photographs was unnecessary and

cumulative. (See *Hulsebus v. Russian* (2d Dist. 1969), 118 Ill. App. 2d 174, 254 N.E.2d 184.) In addition, the pathologist testified that the autopsy procedure may have exaggerated the appearance of superficial injury. To exemplify the distortion caused by the autopsy procedure the following exchange between the prosecutor and his expert witness is presented as it appears in the record:

> "Q. On People's Exhibit 10 when I asked you to point to the subdural hematoma, what is the dark area which appears to be on the left side of the decedent's face? I presume that is his nose? A. Yes."

It is readily apparent that the gruesome nature of the photographs was caused by the autopsy procedure, rather than by an act of the defendant. In this respect, we believe the instant case is similar to *People v. Jackson* (1956), 9 Ill. 2d 484, 138 N.E.2d 528, and *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827.

The only arguable probative value and relevance of these photographs is that they tend to prove that the defendant delivered more than one blow to the head of Braden. However, the defendant testified that, although he believed he struck Braden only once, he may have hit the victim more than once. In addition, the pathologist testified that at least four blows would have to be inflicted to cause the injury which resulted in Braden's death, and several eyewitnesses testified that the defendant struck Braden more than once. Even witnesses friendly to the defendant did not deny that the defendant struck the victim at least three times.

■■ Certainly, it was not necessary for the pathologist to view the photographs to reach his autopsic conclusions. Nor was it necessary for the jury to view the photographs to understand the pathologist's expert testimony. More importantly, viewing the photographs alone would be meaningless and confusing to the jury. Unless the jury listened to and believed the pathologist's testimony, they could not have understood the significance of the photographs. Therefore, we find that the use of the photographs lent no support to the pathologist's testimony and was merely cumulative. As a result, we hold that the trial court, in weighing the great possibility of irreparable prejudice and the slight relevance of the photographs, if any, to a material issue in the case, abused its discretion by allowing the jury to view the photographs.

Accordingly, the judgment of the Circuit Court of Fulton County is reversed and the cause is remanded for a new trial not inconsistent with this opinion.

Reversed and remanded.

STOUDER, J., concurs.

Mr. PRESIDING JUSTICE STENGEL, concurring in part, dissenting in part:

I agree with the majority that the jury was properly instructed on the offense of involuntary manslaughter. I strongly disagree, however, with their disposition of the issue of autopsic photographs raised in this case.

To begin with, despite the majority's ostensible adherence to the general rule that gruesome photographs are admissible if they are relevant, the emerging principle of today's decision is that such photographs are only admissible if the case involves "a gruesome crime." The general rule with respect to gruesome photographs is well settled and I do not believe the majority's departure from it can be justified solely on the basis of the decision in *People v. Dee* (1st Dist. 1975), 26 Ill. App. 3d 691, 325 N.E.2d 336. In fact, *Dee* is distinguishable because there the court's reference to "a gruesome crime" related to the gruesome photograph's potential for prejudice, not its relevance to the case.

Ordinarily the admissibility of gruesome photographs is determined by balancing their relevance against their potential for prejudicing the jury. Yet the majority today has confused these separate elements of relevance and prejudice. Analytically the first step in any case involving gruesome photographs is to determine that they are relevant to some disputed issue. Then, and only then, does it become necessary to weigh their potential for prejudice. The majority's rule, however, relegates this balancing process to a position of secondary importance by requiring the trial judge to decide at the outset whether a particular crime is "gruesome."

This balancing process relies on well settled rules of evidence which can be applied uniformly in all cases, yet permits the court leeway in determining whether relevant photographs are prejudicial in a particular case. The majority's rule, on the other hand, injects an undesirable subjective element into the analysis. I believe, therefore, the usual tests for determining the admissibility of gruesome photographs should have been applied in this case and the admissibility of such photos upheld.

Probative gruesome photographs are admissible to prove such issues as the fact and cause of death, the number and location of the wounds, the manner in which they were inflicted and the wilfulness of the acts in question. (*People v. Jenko* (1951), 410 Ill. 478, 102 N.E.2d 783.) Gruesome photographs are also admissible to show the amount of force used (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208), and to help the jury better understand any medical testimony (*People v. Owens* (1976), 65 Ill. 2d 83, 357 N.E.2d 465; *People v. Ford* (1968), 39 Ill. 2d 318, 235 N.E.2d 576).

I believe the instant photographs were clearly relevant to prove facts in issue, and were admissible to aid the jury in understanding Dr. Mansfield's testimony, to establish the cause of death, to show the amount

of force used, and to counter defendant's position that he only struck Braden once. For example, Mansfield stated that Braden died as a result of subdural hematoma and extensive hemorrhaging at the base of the brain. It would have been unrealistic to expect a jury of laymen to have fully digested this testimony, *e.g.*, that the base of the brain is not synonymous with the back of the head. Mansfield also explained how a blow to one side of the head produces injuries to the opposite side. Here Braden's internal head injuries appeared on the side opposite from where Landry allegedly struck him. The photographs depicted this phenomenon, called contre coup, and were therefore relevant to establish the fact that death probably resulted from Landry's punches.

Furthermore, as the evidence at trial unfolded, the critical issue became whether the defendant's acts were intentional or merely reckless. The photographs in this case, depicting extensive internal head injuries, helped resolve that issue because they tended to support Mansfield's opinion that at least four blows were thrown and the testimony of the occurrence witnesses that Landry hit Braden repeatedly. After having earlier tried to impeach the occurrence witnesses by establishing they were not in a position to actually see what took place after Braden hit the floor, defense counsel cross-examined Mansfield in an attempt to show that death could have resulted from a single blow. Given the conflicting testimony of the witnesses at trial as to the number of blows Landry threw, the photographs made it more likely than not that death did not result from a single blow. The jury was therefore properly allowed to view these photographs in order to resolve a disputed issue bearing directly on the murder charge against Landry.

The defendant's argument that the photographs should not have been admitted in evidence because the pathologist had already given considerable testimony concerning his findings is not novel. It is not a valid objection to admissibility that the pathologist had already testified to the wounds and other conditions shown by the photographs. (*People v. Owens* (1976), 65 Ill. 2d 83, 357 N.E.2d 465.) They portrayed the condition of the body more vividly and accurately than could have been done by oral testimony or the use of charts. Moreover, I disagree with the majority's conclusion that the photographs were cumulative because Landry conceded that he might have hit Braden more than once. In *Owens* the court affirmed the trial court's admission of gruesome photographs despite testimony concerning the fact and cause of death. Here, despite Landry's concession, he also testified that he remembered striking Braden only once. Far from being cumulative, then, the instant photographs helped to clarify defendant's equivocal testimony.

Assuming that the autopsy photographs were relevant and not merely cumulative, it follows that their admission in evidence depended entirely

on the trial court's exercise of its discretion. (*People v. Le May* (1966), 35 Ill. 2d 208, 220 N.E.2d 184.) The majority concedes this much, yet indicates that diagrams and drawings of Braden's internal injuries would have been sufficient. This may or may not be true, but in any event the majority's suggestion begs the point.

Essentially, the majority is substituting its own judgment for the trial court's, although the trial court undoubtedly was in the best position to determine the admissibility of these pictures. Our Illinois Supreme Court recently frowned upon this practice with respect to reduction of sentences by appellate courts in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882. *Perruquet* is analogous because sentencing, like the admission of the instant photographs, is a matter of discretion. The same considerations favoring the decision in *Perruquet* ought to apply here.

It is obvious that a defendant who claims an abuse of discretion assumes a heavy burden. Here the trial judge had to decide whether the photographs were so inflammatory in nature as to outweigh their probative value and preclude their admission. There are limits to the employment of judicial discretion, but those limits were not exceeded in this instance. As the majority notes, Dr. Mansfield explained to the jury that the gruesome nature of the photographs resulted in part from the autopsy process. His statements served to minimize the prejudicial impact of these photographs on the jury as indicated by their refusal to convict the defendant on murder. Accordingly, the defendant's conviction for involuntary manslaughter should be affirmed.