THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ETHEL MAE HOLLINS, a/k/a Thelma Hollins, Defendant-Appellant.

Fourth District   No. 14747

Opinion filed September 22, 1978.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry and Jane F. Bularzik, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Defendant Ethel Mae Hollins, a/k/a Thelma Hollins, appeals her conviction, following trial by jury in the circuit court of Champaign

County, of voluntary manslaughter and her sentence of 3 to 9 years' imprisonment. Her contentions on appeal are that the trial court erred in (a) refusing to give her tendered involuntary manslaughter instruction and (b) admitting into evidence certain photographs and (c) that she should have been permitted to make the election as to sentencing authorized by Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1008—2—4(b).

Defendant's conviction arose out of the May 16, 1977, shooting of Kenneth Jasper at Pittypat's Tavern, a/k/a The Goldenrod, in Champaign. Michael Harvey and Henry Boykins testified at trial as occurrence witnesses.

Harvey testified to being at Pittypat's at about 10:30 the night of the shooting and to overhearing a conversation just outside of the tavern between defendant and Jasper in which defendant told Jasper that she was going to kill him and his friends. Harvey stated that shortly thereafter, defendant raised a gun to Jasper's face, Jasper reached for it, and the gun discharged. According to the witness, defendant continued to shoot at Jasper who then fell to the sidewalk. Defendant shot Jasper twice more, stated that she had told him she would kill him, and then departed. Harvey admitted on cross-examination that a transcript of his previous testimony before the grand jury did not contain statements by him as to defendant threatening Jasper or stating, after the shooting, that she had told him she would kill him.

The testimony of Boykins substantially corroborated that of Harvey. Boykins stated that defendant had the pistol in her hand during her conversation with Jasper prior to the shooting and that, although he, Boykins, had not seen the first two shots which were fired, he did observe defendant shoot Jasper while he was on the sidewalk. Boykins stated that he did not hear defendant threaten Jasper or say, following the shooting, that she had told him she would kill him.

Gary Smith, a State's witness, testified to observing a gun in defendant's hand on the night in question as he left Pittypat's. Other evidence established that the shooting took place shortly thereafter. Smith stated that he had not noticed the gun upon his arrival at the tavern but that he had not been paying attention to defendant's hands then. Smith did not witness the shooting.

Demeitre Winston, also an occurrence witness, testified to being inside Pittypat's at the time of the shooting and to observing defendant aim and shoot at Jasper while he lay on the ground. Winston further testified to being at the Blue Island Tavern during the afternoon of the day of the shooting and to having heard defendant state that she was going to kill Jasper there. This was contrary to her previous statement before the grand jury that such a statement was not made by defendant and to the testimony of Martha Elizabeth Shaw who testified to being with defendant at the Blue Island. Shaw stated that defendant had been cut

and beaten by Jasper that day but that defendant had not stated that she was going to do anything to Jasper.

Samuel Jasper, the victim's uncle, testified to seeing a revolver in defendant's purse while at the Blue Island with defendant's father during the afternoon of May 16, 1977.

Lucille Abdulah also gave testimony at trial as to the shooting, stating that defendant had repeatedly shot at Jasper during the incident.

Testimony was presented on defendant's behalf that Jasper had been instructed in karate and could cause another bodily harm and that Jasper had beaten defendant repeatedly in the past.

David Charles Kelly, an occurrence witness testifying on defendant's behalf, stated that he had observed the shooting, that defendant had nothing in her hands at its commencement, that Jasper had grabbed defendant around the middle just prior to the first shot, that Jasper continued to grasp at defendant while three more shots were fired and that upon Jasper's falling to the ground, defendant shot him twice more. Kelly had not heard defendant threaten Jasper. The witness had seen the gun in defendant's hand during the final two shots but had only observed defendant's empty left hand during the first shots.

Defendant testified at trial, stating that Jasper had cut her hand during the afternoon of May 16, 1977, and denying that she threatened to kill Jasper while at the Blue Island Tavern. Defendant further denied having either a gun or a purse while at the tavern that afternoon.

Defendant's testimony as to the shooting was as follows: That evening, near Pittypat's, Jasper had struck her repeatedly in the eye and the jaw. Later, in front of Pittypat's, Jasper hit her again, told her that she was going with him, and then drew a pistol. Defendant grabbed the gun, Jasper attempted to grab it back, and the gun fired. Thereafter, Jasper came at her and she, with the gun, "kept on shooting him," pulling the trigger. Defendant admitted to shooting at Jasper including twice after he fell to the ground. She stated that Jasper was angry at her and she thought he was going to kill her and denied owning the weapon.

Trial testimony established that Jasper died from the gunshot wounds.

● 1 Originally, defendant was charged by indictment with six counts of murder. At the close of all the evidence, defendant tendered instructions in conformance with IPI Criminal Nos. 7.08 and 5.01 dealing with involuntary manslaughter and recklessness, respectively. Defendant maintains that there was trial testimony by which the jury could have convicted her of involuntary manslaughter and therefore the trial court's refusal to instruct thereon was improper. A defendant is entitled to have submitted to the jury an instruction on a lesser included offense where there is any evidence in the record which, if believed, would so reduce the crime (*People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756).

Section 9—3 of the Criminal Code of 1961 defines involuntary

manslaughter as an unintentional killing of an individual without lawful justification where the "acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual," and are done "recklessly." (Ill. Rev. Stat. 1975, ch. 38, par. 9—3.) Section 4—6 of the Code provides:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1975, ch. 38, par. 4—6.)

Defendant maintains that testimony indicating that Jasper was reaching for her at the time of the shooting and that all of the shots occurred within a brief period of time could support a jury finding that defendant recklessly fired at Jasper in an attempt to scare or warn him. For support, she relies upon (a) *People v. Hines* (1975), 31 Ill. App. 3d 295, 334 N.E.2d 233, in which the reviewing court ruled as error the trial court's refusal to instruct as to involuntary manslaughter where the evidence showed that 30-40 feet separated the defendant and the victim and the defendant had testified that he had fired the shots which killed the decedent "in his [decedent's] direction" in order "to scare him [decedent] away," and (b) *People v. Kelly* (1975), 24 Ill. App. 3d 1018, 322 N.E.2d 527, in which the giving of an involuntary manslaughter instruction was upheld where the evidence revealed that defendant aimed and fired the fatal shot at the victim but defendant's testimony also showed that he intended the shot as a warning, that the gun had twice failed to discharge previously, and that defendant did not intend to shoot or hit the victim.

In *People v. Metts* (1975), 30 Ill. App. 3d 868, 334 N.E.2d 277, cited by the State, the defendant, who possessed a gun, and the victim became involved in a scuffle in which the gun, then pointed at the floor, discharged. The scuffle continued. Thereafter, according to the accused, when she attempted to leave, the victim charged her and she, defendant, "just pointed and fired" the gun. On appeal, defendant argued that the trial court erroneously had refused to instruct the jury as to involuntary manslaughter, pointing to evidence indicating that (a) she had not checked to see whether the gun was loaded, (b) the gun was pointed at the ground when it first went off, and (c) she was not angry when she fired the gun at the victim but only wanted to leave the premises. The reviewing court affirmed the trial court, ruling the involuntary manslaughter instruction was unwarranted and noting that any doubt as to the gun being loaded was erased when the first shot was fired and that defendant admitted to pointing the gun at the victim and pulling the trigger.

The instant case is similar to *Metts* and unlike *Hines* and *Kelly*. Here,

neither defendant nor any other witness testified to the shooting being the result of an attempt to scare or warn Jasper. On the contrary, defendant testified that she was scared of Jasper and that she shot "at" him and "kept on shooting him" and pulling the trigger. Nothing in this testimony supports the conclusion that defendant's acts were merely reckless.

● 2 Defendant further asserts that characterization of the shooting as reckless is supported by the fact that although the trial testimony indicated that six shots were fired, the physician conducting the post-mortem examination of the victim testified to finding only two bullet wounds. That physician, however, also testified to multiple lacerations about the victim's body, possibly caused by bullet fragments. These numerous wounds negate defendant's "recklessness" theory. The trial court did not err in refusing defendant's tendered instructions.

At trial, four black and white photographs of the deceased were admitted into evidence over defendant's objection. The photographs were taken the day following the shooting at the hospital to which the deceased was taken and depict wounds to decedent's body. Defendant contends that these photographs were erroneously admitted due to their gruesome character and prejudicial effect upon the jury. She points out that the physician who examined the victim gave extensive testimony as to the number, location and scope of the wounds inflicted upon the decedent and as to the causes of decedent's death and argues that since neither decedent's identity nor the cause of his death were disputed, the photographs were not necessary to aid the jury, citing *People v. Landry* (1977), 54 Ill. App. 3d 159, 368 N.E.2d 1334, and *People v. Garlick* (1977), 46 Ill. App. 3d 216, 360 N.E.2d 1121.

● 3 The photographs in question here are unlike those in *Landry* whose gruesome nature was due to an autopsy procedure performed upon the subject matter body. In *Garlick*, the court ruled the admission into evidence of a color photograph depicting the deceased's massive head wound was error where the admission served no useful purpose in the case and defendant had admitted the killing but proceeded to trial with a defense of insanity. Here, the photographs were not excessively gruesome and corroborated other evidence as to the nature, location and severity of the decedent's injuries and as to the cause of death. Photographs of this nature have been ruled properly admitted in other cases (*People v. Smith* (1972), 5 Ill. App. 3d 648, 283 N.E.2d 727; *People v. Gerecke* (1977), 45 Ill. App. 3d 510, 359 N.E.2d 1178). Moreover, in *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, the supreme court ruled the admission of photographs of the deceased not to have been error even though the accused agreed to stipulate to the identity of the victims and the causes of their deaths. We deem the trial court's admission of the instant photographs not to have been an abuse of discretion.

■ Finally, defendant maintains that the trial court's refusal to permit her to make the election as to sentencing as authorized by section 8—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1008—2—4(b)) violates the equal protection clauses of the State and Federal constitutions. Recently, in *People v. Grant* (1978), 71 Ill. 2d 551, 377 N.E.2d 4, however, the supreme court ruled that provision not violative of equal protection. The arguments forwarded by defendant here are similar to those addressed by the court in *Grant*, and we deem that decision to control here.

Accordingly, defendant's conviction and sentence are affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.