THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALROY J. GRACEY, JR., Defendant-Appellant.

Fifth District    No. 80-198

Opinion filed February 19, 1982.

John H. Reid and John W. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Donald W. Weber, State's Attorney, of Edwardsville (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, and Robert C. Cook, research assistant, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

Defendant, Alroy J. Gracey, Jr., appeals his conviction of the crime of murder entered by the circuit court of Madison County after a trial by jury. On appeal defendant raises several related issues, but in view of our disposition we need only determine whether defendant was deprived of fundamental fairness because of the restrictions placed upon his defense.

The events giving rise to the murder charge occurred during the late evening hours of November 1, 1979, and the early morning hours of November 2, 1979. It was undisputed that defendant and the decedent, Terry Stockman, had been together at the same tavern only a short time before decedent was found shot to death in his car outside the tavern, and that both men had been drinking heavily during the evening. It was also undisputed that a bullet lodged inside the passenger door of the car in which decedent was found matched test firings from a gun found in defendant's home pursuant to a search warrant.

In view of the fact that both men had consumed substantial amounts of alcohol, and in view of evidence to suggest that decedent may have threatened both defendant and defendant's son, the case presented several potential defense-related issues. Accordingly, very early in the proceedings, even prior to the time it furnished discovery to the defense, the prosecution requested a disclosure of any defenses which would be used at trial. Defense counsel's written reply, filed only 24 days after the shooting, stated:

"The Defendant not being schooled in law, does not know what defenses will be made at the trial or hearing, but that whatever defense or defenses are determined upon by his attorney in the analyzing of the facts and reports as hereafter to be provided by the State will be utilized."

Defense counsel never filed an additional written response concerning defenses that would be raised and his initial oral response during an early pretrial hearing was similarly ambiguous. At that time the following colloquy took place:

"PROSECUTOR: Additionally, Your Honor, I would ask * * * whether or not any affirmative defenses would be presented * * * [but] the burden of proof is not an affirmative defense.

DEFENSE COUNSEL: That is his defense that he didn't shoot the man.

PROSECUTOR: You don't have an alibi or anything like that?

DEFENSE COUNSEL: By alibi, that he was somewhere else?

PROSECUTOR: Yes.

DEFENSE COUNSEL: He was nowhere else."

A month before trial defense counsel received an amended pathologist's report which indicated that the path of the bullet through decedent's head was from left to right rather than right to left as originally reported. Despite the fact that this information corroborated the State's theory that defendant shot decedent while standing outside the driver's side of decedent's car, defense counsel failed to change his position that defendant's only defense was the State's inability to sustain its burden of proof. At a subsequent hearing occurring only two weeks before trial, the following exchange took place:

"PROSECUTOR: The only thing I have, Your Honor, is I don't anticipate filing any other charges * * * because at this time I understand the defense is the State cannot prove beyond a reasonable doubt or something of that nature. If there were to be the defense of manslaughter or something like that, I may consider filing other charges. But as far as I know and I have no written confirmation but that the defense is that the State cannot prove it beyond a reasonable doubt. Is that correct?

DEFENSE COUNSEL: Yes.

PROSECUTOR: I don't intend on filing any more Informations, Your Honor."

The case proceeded to trial and, at the close of the State's case, the prosecution filed a motion pursuant to Supreme Court Rule 415 (73 Ill. 2d R. 415) for an order precluding the defense from raising affirmative defenses at trial as a sanction for their failure to disclose such defenses during discovery.

Defense counsel argued that the State had been apprised of potential defenses by a transcript of defendant's statement while under hypnosis, which indicated the possibility of intoxication and justification defenses. The court, however, granted the motion for sanctions and barred defendant from presenting evidence on any affirmative defense "except as allowed as to manslaughter and intoxication." Defendant was subsequently allowed to present evidence on the issues of intoxication and justifiable use of force; however, in view of the sanctions imposed, the court refused to instruct the jury concerning the affirmative defenses of self-defense and intoxication.

We agree with the trial court that, although the State may have been made aware of potential issues by the discovery process, defense counsel failed to satisfy his duty to inform the State that those issues would in fact be raised. (See 73 Ill. 2d R. 413(d).) It cannot be seriously contended that the hypnosis transcript provided to the State constituted the type of notice contemplated by Rule 413(d), and we therefore find no fault with the actions taken at trial by either the trial court or the prosecution. As a result we are faced with the unenviable task of determining whether there was such a strong indication that affirmative defenses were warranted in this case that conducting a trial without affording the defendant the benefit of those defenses was a *per se* denial of fundamental fairness.

The record demonstrates that the prosecutor went out of his way to afford defense counsel every opportunity to give notice of affirmative defenses as required by Supreme Court Rule 413(d) (73 Ill. 2d R. 413(d)) in order that defendant's right to raise these claims at trial might be preserved. The pretrial discovery process undeniably alerted the prosecutor to the fact that defendant had consumed a large quantity of alcohol on the night in question and to the fact that the victim had a reputation for and a history of violence, which included the stabbing of a police officer only a few months previously. It cannot be seriously questioned that the prosecutor was aware of the possibility that intoxication and self-defense might become issues in the case, but even so, once defense counsel had declined every opportunity to raise these issues, the prosecutor could do nothing more than prepare his trial strategy accordingly. While defense counsel's neglect to raise certain defenses may prevent defendant from

asserting any defense at all, and could in the process deny him fundamental fairness, it is not the duty of the prosecutor to raise and refute defenses which he believes should be made by the attorney for the defendant.

Similarly, it would be difficult to criticize the trial judge for imposing sanctions pursuant to Supreme Court Rule 415 when the State had gone to trial without notice that affirmative defenses were an issue in the case. If, at the end of the State's case, the prosecutor were all but forced to reopen its case, or to amend the pleadings to include a lesser included offense, the State would be made to appear as though it were admitting to the jury that it believed its case was weak. That would certainly be the type of "trial by ambush" that the trial court correctly sought to avoid. In light of defense counsel's repeated statements prior to trial indicating that no affirmative defenses would be raised, we do not believe the trial court erred in finding a "flagrant" violation of discovery rules which warranted the preclusion of affirmative defenses in this case. See *People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274. *Cf. People v. Short* (1978), 60 Ill. App. 3d 640, 377 N.E.2d 389, where the exclusion of defendant's alibi witness due to defendant's failure to inform the State of the alibi defense prior to trial was held to be a proper sanction. See also *People v. Braxton* (1980), 81 Ill. App. 3d 808, 401 N.E.2d 1062.

Defense counsel in the case at bar acknowledged to the court that his failure to disclose the affirmative defenses to the State was the result of his own misunderstanding. It is apparent that counsel's mistake greatly prejudiced defendant, as it effectively precluded defendant from presenting the defenses available to him. Information disclosed during the discovery process and at trial raised serious questions concerning defendant's sobriety and the decedent's reputation for and history of violent behavior. Several witnesses testified as to defendant's drinking prior to the shooting, and defendant himself stated that he had had between 18 and 21 drinks in the previous 8-hour period. There was also considerable evidence that the decedent had threatened to "do in" defendant and his son the night of the shooting and that defendant believed the decedent had a gun with him in his car that night. The importance ascribed to these potential issues by the trial court is evidenced by the care with which it made its sanctions ruling. While the court ruled that the jury would not be instructed on intoxication or self-defense in view of defense counsel's failure to notify the State of these affirmative defenses, the court did allow evidence on these issues to go before the jury without their attendant instructions. The court gave its reasoning for this somewhat asymmetrical ruling by stating that "both the amount that [defendant] may have consumed in the way of alcoholic beverages and what his state of mind was, with regard to the victim, are both very much a part of this

case, and I feel that if I deny him the right to [present evidence] on those matters I would deprive him of any adequate defense."

We agree with the trial court that denying defendant an opportunity to present these issues would be tantamount to denying him any defense at all. However, simply presenting evidence on these points was not sufficient to give defendant an adequate defense because the jury was not instructed as to the legal significance of any findings it might make based on this evidence. (See *People v. Peeler* (1973), 12 Ill. App. 3d 940, 299 N.E.2d 382.) The tension in the trial court's ruling which arose as it saw omissions in the presentation of defendant's case is apparent from a reading of the transcript. The court made every effort to uphold the integrity of the discovery statute while affording defendant an opportunity to develop his case fully. Nevertheless, the charge against defendant is a serious one, with large stakes for defendant and therefore for society at large. Thus, we cannot disregard the effect of these omissions in making our decision.

Our review of the record convinces us that defense counsel's failure to comply with the discovery provisions of Rule 413(d) resulted in the imposition of sanctions which effectively deprived defendant of his right to a fair trial. Because of the extensive evidence indicating possible intoxication and justification defenses, we feel that exclusion of these defenses produced substantial prejudice to the defendant and that his conviction, without the opportunity to present an adequate defense, represents a possible miscarriage of justice. Accordingly, we find that defendant is entitled to a new trial at which the jury will be allowed to determine the merits of his affirmative defenses.

Reversed and remanded.

KASSERMAN, J., concurs.

JUSTICE WELCH, specially concurring:
I am not convinced that the defendant was prejudiced by the failure of the trial court to instruct the jury on the affirmative defenses of voluntary intoxication and self-defense. There was little evidence to suggest that the defendant was so intoxicated as to negate the intent to commit murder *(People v. Proper* (1979), 68 Ill. App. 3d 250, 385 N.E.2d 882), and certainly not enough evidence was presented to render the refusal to instruct on that defense reversible error. (*People v. Jones* (1972), 5 Ill. App. 3d 926, 284 N.E.2d 404.) Moreover, the affirmative defense of self-defense was not available to the defendant because he did not admit that he shot the deceased. (*People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756; *People v. Lahori* (1973), 13 Ill. App. 3d 572, 300 N.E.2d 761.)

However, the discovery sanctions imposed by the trial court denied the defendant a fair trial in another way.

The defendant requested that the jury be instructed that he could be found guilty of voluntary manslaughter if he acted in the belief that force was necessary to protect himself, but that belief was unreasonable. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a).) Although the trial court instructed the jury on the "provocation" form of voluntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b)), it refused the defendant's instructions pertaining to the unreasonable belief that force was necessary. The court stated that these instructions were intended to be coupled with those on the affirmative defense of self-defense, which had been excluded as a discovery sanction.

In taking this action, the trial court imposed a discovery sanction which did not relate to the defendant's failure to disclose his affirmative defenses. Because the case law in this State requires that these voluntary manslaughter instructions be given when even minimal evidence is introduced on the defendant's belief that the use of force was necessary (*People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378; *People v. Joyner*), the defendant was denied a fair trial when the jury was not instructed on this issue. For these reasons, I concur in the result reached by the majority.