THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STACEY M. HOUSER, Defendant-Appellant.

Fourth District   No. 4—97—0615

Argued December 17, 1998.—Opinion filed May 28, 1999.

Daniel D. Yuhas and Martin J. Ryan (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Perry L. Miller (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Following a jury trial in May 1997, defendant, Stacey M. Houser, was convicted of armed robbery (720 ILCS 5/18—2 (West 1996)), sentenced to nine years' imprisonment with credit for 47 days served, and ordered to reimburse Champaign County $300 for public defender fees pursuant to section 113—3.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113—3.1 (West 1996)). Defendant appeals, claiming (1) the trial court abused its discretion by precluding a necessity defense; (2) the trial court erred by admitting into evidence two prejudicial documents as the basis of an expert witness' opinion; (3) the State failed to prove she was not compelled to commit robbery beyond a reasonable doubt; (4) the errors in the trial court cumulatively warrant reversal; (5) she is entitled to two additional days' sentence credit; and (6) imposition of the recoupment order prior to services being rendered and without a hearing was error. We agree with defendant on the first and last issues and vacate the recoupment order, reverse the judgment, and remand.

## BACKGROUND

In February 1996, defendant was a patient at the Prairie Center (Center) in Champaign, Illinois. She was undergoing treatment for addiction to crack cocaine. While at the Center, defendant met Richard Rowe and a relationship developed. Defendant and Rowe were both discharged from the Center on March 1, 1996, and, according to defendant's testimony, they moved into defendant's farmhouse in Tolono. After a few days, Rowe found himself uncomfortable living at the farmhouse and the couple moved to the Prospect Motel in Champaign.

Defendant testified Rowe became abusive toward her sometime between the first and second week after leaving the Center, and both defendant and Rowe resumed drug use. Defendant's testimony included several specific incidents of abuse though she was unable to place them in time or chronological order. Rowe would not allow defendant any privacy. He accompanied her when she used the bathroom and he would not allow her to use the telephone or to leave the motel room without him. On one occasion Rowe punched defendant in the face for "fronting" him in the presence of his friends when she suggested she drive. When defendant said she thought her nose was broken, Rowe punched her again just "for sure." Rowe forced defendant to have sex with a man and, on a separate occasion, with a woman, while he watched. Defendant also witnessed Rowe brutally beating others and specifically recalled Rowe beating a man with a baseball bat. Rowe often abruptly stopped a violent assault and stared or laughed at his victim.

Defendant worked at the Bigfoot Amoco in Mahomet from March 30 through April 11, 1996. Defendant testified Rowe dropped her off and picked her up for her shifts. The store manager testified he never noticed bruises on the defendant, and on at least one occasion, defendant drove herself to work. Defendant testified there were no beatings during the time she was employed, she had to give Rowe all her earnings, and she quit the job upon Rowe's insistence.

On the night of April 24, according to defendant's testimony, Rowe ordered defendant into the car "for a ride." Defendant admitted she used crack cocaine earlier that day. Rowe parked the car alongside the Bigfoot Amoco store and went inside to purchase beer and cigarettes. When the cashier requested identification, Rowe said he would be back and went out to the car. Rowe returned to the counter twice, where each time the cashier requested identification and Rowe did not have it.

Defendant testified after Rowe returned to the car for the last time, he held a knife to her throat and told her she would help him

rob the store or he would kill the cashier and then kill defendant. Rowe then pulled the car up to one of the gas pumps and began pumping gas. While he was pumping gas, the cashier, who had grown suspicious, wrote down his license plate number. Defendant entered the store, walked behind the counter, and attempted to take the keys to the register from the cashier.

While they struggled over the keys, Rowe came in and tried to convince the cashier to give defendant the keys by telling her "Todd" (the store manager) said it was okay. When his ploy failed, Rowe jumped over the counter and attacked the cashier. While Rowe and the cashier struggled, defendant opened the register and put the cash contents into a plastic bag, emptied the cash box, and checked the spare drawer, which is usually set up for the next shift. Meanwhile, Rowe wrestled the cashier to the floor, straddled her torso, and cut her neck with a knife. At some point in the struggle Rowe told defendant to go out to the car, which she did. The cashier testified Rowe abruptly stopped the assault and stared at her, then got up and walked back to the customer side of the sales counter. Rowe ordered the cashier to stay on the floor, assaulted her once more (ripping off her necklace), demanded she hand him some cigarettes, and left the store. After a short time, the cashier called 9-1-1.

Police apprehended Rowe and defendant after a brief car chase and minor crash. Rowe fled on foot and defendant waited at the car while the police officer pursued him. At the time of the arrest defendant had a knife in her possession which she testified she carried on Rowe's orders as a backup in the event he needed to defend himself.

The store manager testified the following items were missing from the store after the robbery: $496 currency, cigarettes, beer, and lottery tickets. Police recovered empty beer cans, lottery tickets, and a bag of cash from Rowe's car. Police also recovered defendant's handbag containing a cellular phone and a pager from Rowe's car. Defendant testified the phone was given to Rowe by a fellow patient at the Center and they never used it because they did not have the code to "unlock" it.

Defendant's discovery response disclosed the intention to raise a compulsion defense. On the morning of jury selection, defense counsel filed a third response to discovery informing the State of their intention to alternatively raise a necessity defense. The State objected to the filing because it was untimely. The trial court heard arguments, ruled in favor of the State, and barred defendant from making a necessity defense.

Dr. Arthur Traugott testified as an expert witness for the defense. He opined defendant suffers from posttraumatic stress disorder as a

result of repeated beatings and forced sex and witnessing Rowe's brutality against others. Traugott testified he believes defendant was abused by Rowe and his belief in her credibility is supported by the consistency of her story, her symptoms, tests he administered, and comparison of her story to other information he was provided by defense counsel. Finally, Traugott testified he believed defendant was compelled to commit the robbery, in accordance with the statutory definition of compulsion.

The jury found defendant guilty of armed robbery and not guilty of aggravated battery. She was sentenced to nine years' imprisonment with credit for 47 days as time served.

## ANALYSIS

### A. Preclusion of the Necessity Defense as a Discovery Sanction

■ We first address whether defendant was entitled to raise a necessity defense. " 'Fundamental fairness includes, among other things, seeing to it that certain basic instructions, essential to a fair determination of the case by the jury, are given.' " *People v. Pegram*, 124 Ill. 2d 166, 173, 529 N.E.2d 506, 509 (1988), quoting *People v. Ogunsola*, 87 Ill. 2d 216, 222, 429 N.E.2d 861, 864 (1981). A defendant is entitled to the benefit of any defense shown by the evidence, even where that evidence is "slight." *People v. Bratcher*, 63 Ill. 2d 534, 540, 349 N.E.2d 31, 34 (1976); *People v. Everette*, 141 Ill. 2d 147, 156, 565 N.E.2d 1295, 1298 (1990).

> "In general, a defendant is entitled to have the jury instructed on the defense of necessity when evidence, sufficient to raise a reasonable doubt as to guilt, has been introduced that the accused, without blame in occasioning or developing the situation, reasonably believed his conduct, which would otherwise be an offense, was necessary to avoid a public or private injury greater than the injury which might have resulted from his own conduct." *People v. Ferree*, 221 Ill. App. 3d 212, 216-17, 581 N.E.2d 699, 702 (1991).

■ Defendant testified Rowe ordered her into the car and drove to the Bigfoot Amoco. Both defendant and Traugott testified Rowe threatened the life of the cashier at the same time he threatened defendant to compel her participation. According to defendant's testimony, when she entered the store she was not interested in committing a robbery but in saving her life and "the life of another person," the cashier. On the foregoing facts, we find defendant was entitled to raise a necessity defense.

We next consider the propriety of the trial court's preclusive sanction. Defendant concedes the untimely revelation of her intent to raise the defense was in violation of Supreme Court Rule 413(d) (134 Ill. 2d

R. 413(d)), which requires defense counsel inform the State of any defenses he or she intends to offer. However, defendant contends it was an abuse of discretion to bar the defense as a sanction for her failure to comply with discovery rules.

■ Sanctions may be imposed for a violation of discovery rules under Supreme Court Rule 415(g) (134 Ill. 2d R. 415(g)), which reads as follows:

> "(i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances.
>
> (ii) Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court."

The imposition of sanctions for violations of discovery rules is reviewed under an abuse of discretion standard. *People v. Stack*, 261 Ill. App. 3d 191, 198-99, 633 N.E.2d 42, 47 (1994). To exercise sound legal discretion, the trial court must consider the available alternatives. *People v. Foster*, 271 Ill. App. 3d 562, 569, 648 N.E.2d 337, 342 (1995). Sanctions are designed to accomplish the purpose of discovery, and the imposition of sanctions should not encroach on a fair trial. *People v. Spicer*, 158 Ill. App. 3d 699, 702, 511 N.E.2d 235, 238 (1987). Excluding an accused's defense is an extreme sanction, applicable only in the most extreme situations. *People v. Brooks*, 277 Ill. App. 3d 392, 398, 660 N.E.2d 270, 274 (1996).

The case at bar is analogous to *Foster*, decided by this court. Foster was charged with two counts of aggravated battery and never filed a discovery response disclosing his intention to assert the affirmative defense of self-defense. *Foster*, 271 Ill. App. 3d at 563-64, 648 N.E.2d at 338. At the start of trial, the circuit court barred Foster from raising any affirmative defenses because of his failure to comply with discovery rules. Foster presented no evidence, and no jury instruction on self-defense was given. *Foster*, 271 Ill. App. 3d at 565-66, 648 N.E.2d at 339.

Reversing Foster's conviction, this court found allowing defense counsel to flaunt discovery rules or completely barring the defense were not the only options available. *Foster*, 271 Ill. App. 3d at 567-68, 648 N.E.2d at 340-41. We held the trial court did not fully and appropriately exercise its discretion when it failed to consider alternative sanctions for an attorney's wilful violation of discovery rules. *Foster*,

271 Ill. App. 3d at 569-70, 648 N.E.2d at 342. Moreover, we urged trial courts to consider all available alternatives *before* imposing a severe sanction on a defendant. *Foster*, 271 Ill. App. 3d at 568-69, 648 N.E.2d at 341.

In *People v. Levin*, 207 Ill. App. 3d 923, 566 N.E.2d 511 (1991), the second district considered whether barring a defense witness' testimony on a particular point as a sanction for violation of discovery rules was an abuse of discretion. The *Levin* court held the preclusion of evidence sanction is limited to the most extreme cases of discovery violations (*Levin*, 207 Ill. App. 3d at 933, 566 N.E.2d at 518) and, because a continuance would have cured any prejudice against the State, barring the testimony was an abuse of discretion (*Levin*, 207 Ill. App. 3d at 934, 566 N.E.2d at 518). Sanctions should be fashioned to meet the circumstances of the case. The ultimate objective is to compel compliance with the rules, not to punish a party for his or her attorney's errors. *Levin*, 207 Ill. App. 3d at 933, 566 N.E.2d at 518.

In *People v. Gracey*, 104 Ill. App. 3d 133, 432 N.E.2d 1159 (1982), the fifth district held the defendant was denied fundamental fairness when the trial court precluded him from presenting justification and intoxication defenses in his murder trial. The trial court barred the defenses as a sanction for defendant's failure to disclose them in discovery. Although the facts in evidence supported the defenses, the jury was not instructed as to the legal significance of any findings it might make based on that evidence. *Gracey*, 104 Ill. App. 3d at 137, 432 N.E.2d at 1162. With the jury so impaired, the defendant was prejudiced and the court feared a miscarriage of justice had occurred. *Gracey*, 104 Ill. App. 3d at 137, 432 N.E.2d at 1162.

Similarly, in *Brooks*, 277 Ill. App. 3d at 399, 660 N.E.2d at 275, the first district reversed a conviction after the trial court barred the defendant's alibi defense. The defendant's violation of discovery rules consisted of a typographical error in an address on the alibi witness list. *Brooks*, 277 Ill. App. 3d at 396, 660 N.E.2d at 273. On review, the court held striking the alibi defense denied defendant a fair trial because, " 'It is a fundamental right of a defendant to present his theory of the case,' " and the State failed to show how it was prejudiced by defendant's minor infraction of the rules. *Brooks*, 277 Ill. App. 3d at 398-99, 660 N.E.2d at 274, quoting *People v. Osborne*, 114 Ill. App. 3d 433, 437, 451 N.E.2d 1, 3 (1983).

In this case, defendant's discovery violation did not create an "extreme situation" sufficient to warrant barring a defense she was entitled to raise. The State received notice of defendant's intent to present the necessity defense on the day jury selection began, when defendant sought leave to file a third response to discovery. The State

objected and argued because the necessity and compulsion defenses are comprised of different elements, and it had only prepared to refute compulsion, allowing the necessity defense would be unfairly prejudicial. Defense counsel argued both defenses rest on the same facts; therefore, the additional defense would require no changes to the witness list or the evidence, and any prejudice to the State would be slight. Defense counsel also argued the State had prior notice of the applicability of the necessity defense because Traugott's report had been disclosed and it contained the assertion defendant acted out of fear for her own life and the life of the cashier. The trial court was persuaded by the State and sustained its objection, precluding defendant from putting on a necessity defense.

As in the cases cited, the trial court failed to properly exercise its discretion when it denied defendant a fundamental right without (a) sufficiently establishing *how* the State was unfairly prejudiced, and (b) considering alternative sanctions. The trial court's decision to bar the defense was not warranted absent further inquiry as to how the State would be unfairly prejudiced.

Undeniably, the compulsion and necessity defenses are comprised of different elements. The compulsion defense forgives otherwise criminal conduct if the actor reasonably believed he would suffer death or great bodily harm if he did not perform the criminal conduct. 720 ILCS 5/7—11 (West 1996). Under a necessity defense, conduct otherwise constituting an offense is justifiable if the defendant was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury that might reasonably result from his own conduct. 720 ILCS 5/7—13 (West 1996). The inquiry does not, however, end there. In this case, the two defenses at issue are closely linked, sharing the same factual basis. Both defenses rest on the credibility of defendant's testimony as to the conduct of Rowe. Under these circumstances, unfair prejudice to the State upon the untimely introduction of an alternative defense theory is not a foregone conclusion.

At trial, the State's position was defendant was a willing participant in the robbery and her story of abuse and coercion was not credible. Under this prosecutorial strategy, the State did not set out to prove the circumstances of the crime failed to meet the elements of compulsion. Rather, the State set out to prove defendant a liar. This strategy does not turn on the theory of the defense, for if defendant was lying about being compelled to participate, she was also lying about acting under necessity; if she was not, the jury could properly acquit under either theory. Had the court pressed the State on its

claim of unfair prejudice, it might have learned the State's strategy would not have been unduly prejudiced by allowing the necessity defense.

Moreover, allowing the necessity defense would have had little impact on much of the State's case in chief. The first witnesses to testify for the State were occurrence witnesses, *i.e.*, the cashier, the store manager, and several police officers. These witnesses testified to the facts, and their testimony depended little, if at all, on theories of the defense. The first witness to testify to defendant's state of mind was not called until the third day of trial, and defendant did not testify until the fourth day. We are not satisfied a continuance or other alternative sanction could not have rectified the situation created by defense counsel's error. Barring a defense is a sanction that infringes upon the rights of the defendant and should only be imposed as a last resort. See *Foster*, 271 Ill. App. 3d at 568-69, 648 N.E.2d at 341.

We note a less severe sanction would serve the goals of the discovery rules and of the sanction provision more effectively than barring the defense. The primary goals of pretrial discovery are to promote the search for the truth and eliminate surprise as a trial tactic. *People v. Boclair*, 119 Ill. 2d 368, 373, 519 N.E.2d 437, 439 (1987). The objectives of the discovery rules are accomplished by compliance, not by the exclusion of material evidence. Sanctions serve the objectives of discovery by "accommodating" for the adverse effects of discovery violations. If sanctions other than exclusion can sufficiently correct and deter discovery violations, then there is no reason to resort to a sanction "that itself constitutes 'a conscious mandatory distortion of the fact-finding process whenever applied.' " *Taylor v. Illinois*, 484 U.S. 400, 425, 98 L. Ed. 2d 798, 821, 108 S. Ct. 646, 661-62 (1988) (Brennan, J., dissenting, joined by Marshall & Blackmun, JJ.), quoting J. Weinstein, *Some Difficulties in Devising Rules for Determining Truth in Judicial Trials*, 66 Colum. L. Rev. 223, 237 (1966).

Because the trial court abused its discretion when it failed to consider all available alternatives before imposing the most severe sanction on defendant for an error of her attorney, defendant's conviction is reversed and remanded.

## B. Admission of Exhibits as Basis of Expert Witness' Opinion

While it is not necessary for us to address defendant's evidentiary claims, we offer the following discussion for the trial court's consideration on remand.

■ Defendant contends admission of exhibit Nos. 13 and 14 put irrelevant, confusing, and highly prejudicial information before the jury.

Exhibit No. 13 is a transcript of the testimony of a psychiatrist, taken at Rowe's fitness hearing, in which the psychiatrist testified Rowe was malingering, *i.e.*, faking mental illness for secondary gain. Exhibit No. 14 consisted of letters written to defendant, by Rowe, after their arrests. Both exhibits were admitted as basis of expert witness testimony. Such evidence has been admissible in Illinois since the Supreme Court of Illinois adopted Federal Rules of Evidence 703 and 705 (28 U.S.C. app. Fed. Rs. Evid. 703, 705 (1994)) in *Wilson v. Clark*, 84 Ill. 2d 186, 196, 417 N.E.2d 1322, 1327 (1981). Under Rule 703, the underlying facts or data upon which an expert is found to have reasonably relied are not admitted for their truth but " 'for the limited purpose of explaining the basis for the expert witness' opinion.' " *City of Chicago v. Anthony*, 136 Ill. 2d 169, 185, 554 N.E.2d 1381, 1388 (1990), quoting *People v. Anderson*, 113 Ill. 2d 1, 12, 495 N.E.2d 485, 489 (1986). A key step in ruling on admissibility of Rule 703 evidence is determining whether the type of information used by the expert is reliable. *Anthony*, 136 Ill. 2d at 185, 554 N.E.2d at 1388. Such underlying matter is "reliable" if it is the type of data reasonably relied upon by experts in the particular field. *Anthony*, 136 Ill. 2d at 185, 554 N.E.2d at 1388.

■ The circuit court has discretion to determine whether the underlying facts or data are of a type reasonably relied upon by experts in the field, and such determination shall not be disturbed absent an abuse of discretion. *Anthony*, 136 Ill. 2d at 186, 554 N.E.2d at 1389. However, the circuit court shall not " 'abdicate its independent responsibilities to decide if the bases meet minimum standards of reliability as a condition of admissibility' " simply because the evidence is being admitted under Rule 703. *Anthony*, 136 Ill. 2d at 186, 554 N.E.2d at 1389, quoting *In re "Agent Orange" Product Liability Litigation*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985). "[A] trial judge need not allow an expert to state the underlying facts or data of his opinion 'when [their] probative value in explaining the expert's opinion pales beside [their] likely prejudicial impact or [their] tendency to create confusion.' " *Anthony*, 136 Ill. 2d at 185, 554 N.E.2d at 1388, quoting *Anderson*, 113 Ill. 2d at 12, 495 N.E.2d at 490.

> "The reason for the substantive inadmissibility of the facts or data upon which an expert relies must be considered by the circuit court. If another rule of law applicable to the case excludes the information sought to be relied upon by the expert, the information may not be permitted to come before the jury under the guise of a basis for the opinion of the expert." *Anthony*, 136 Ill. 2d at 186, 554 N.E.2d at 1389.

■ Our concern in this case is with the State's failure to lay the

proper foundation for admission of exhibit Nos. 13 and 14 and its use of the exhibits *not* to explain the basis of the expert's testimony, but to prejudice the jury against defendant. A proper foundation requires the documents be of a type reasonably relied upon by experts in the field. Asking the testifying expert himself whether he relied on the evidence does not lay a sufficient foundation. The first question is not whether *he* relied on it, but whether it is the type of document reasonably relied upon *by experts* in his field.

We further advise the State not to lose sight of the purpose for admitting evidence under Rule 703. Such evidence is admitted for the limited purpose of exploring the basis for the expert's opinion. In this case, the prosecutor repeatedly read aloud short sections of exhibit No. 14 and, after each section, asked the witness if he relied on it. The prosecutor never asked the witness to explain how, or in what way, he considered the text being read. Thus, the prosecutor's goal appears to have been to put the substance of the documents before the jury, rather than to examine the basis for the opinion. Rule 703 cannot be used to make an end-run around other evidentiary principles in an effort to sully the defendant with otherwise inadmissible evidence.

## C. Reasonable Doubt

■ In light of our decision to remand this case for a new trial, double jeopardy requires we address defendant's reasonable doubt claim. *People v. Digirolamo*, 179 Ill. 2d 24, 42, 688 N.E.2d 116, 125 (1997). Our holding in this case is not based on a finding of insufficient evidence. Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). We find ample evidence to support defendant's conviction. The cashier testified to defendant's participation in the robbery. The store manager testified defendant did not appear battered during the course of her employment. Although defendant testified to horrific abuse at the hands of Rowe, her testimony was sketchy as to dates and details. Police officers testified to defendant's casual demeanor upon arrest, her possession of a weapon, a cellular phone, and a pager. On this evidence, the jury could reasonably conclude defendant was a willing participant in the armed robbery and hold her accountable.

## D. Recoupment Order Entered Upon Appointment of Counsel

■ Defendant next contends the court erred in (1) failing to hold a hearing to assess her ability to pay attorney fees under section 113—3.1 of the Code, and (2) entering the recoupment order before any

legal services were rendered. In *People v. Love*, 177 Ill. 2d 550, 563, 687 N.E.2d 32, 38 (1997), the Supreme Court of Illinois held trial courts are required to conduct hearings into defendants' financial resources as a precondition to ordering recoupment. In *People v. Cozad*, 158 Ill. App. 3d 664, 672, 511 N.E.2d 211, 217 (1987), this court held assessment of fees in advance of services being rendered is not appropriate. In this case, defendant was summarily ordered to pay the $300 fee when she requested appointment of counsel and no hearing was held. The State concedes under the precedent of *Love* the recoupment order must be vacated and the cause remanded for compliance with the requirements of *Love*.

We vacate the recoupment order, reverse the conviction and remand for a new trial. We need not address the matter of defendant's sentence credit, which can be raised with the trial court if she is again convicted.

## CONCLUSION

Vacated in part and reversed in part; cause remanded.

McCULLOUGH and GARMAN, JJ., concur.