**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220285-U

Order filed July 6, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0285 Circuit No. 16-CF-2230 |
| | ) | |
| CHRISTOPHER D. DEWEY, | ) ) | Honorable Vincent F. Cornelius, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Brennan and Hettel concurred in the judgment.

**ORDER**

¶ 1      *Held*:   The circuit court abused its discretion in sanctioning the State's discovery violation by barring an expert's testimony because (1) a brief continuance would cure any surprise or prejudice to defendant, (2) his anticipated testimony is material to the outcome of the case, (3) his credentials and investigation were known to defendant during pretrial, and (4) the record does not indicate that the State's failure to disclose the expert was done in bad faith.

¶ 2      The State appeals the circuit court's denial of its motion to reconsider the discovery

sanction that excluded the State's expert witnesses under Illinois Supreme Court Rule 415(g)(i)

(West 2016), as a result of the State's failure to disclose any witnesses in discovery until the eve of trial, five years and six months into the case. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4        On October 19, 2016, defendant, Christopher D. Dewey, was charged with eight counts of unlawful sale of drug paraphernalia (720 ILCS 600/3(a) (West 2016)), one count of identity theft (720 ILCS 5/16-30(a)(1) (West 2016)), one count of fictitious or unlawfully altered identification card (15 ILCS 335/14A(b)(1) (West 2016)), and two counts of money laundering (720 ILCS 5/29B-1 (West 2016)). That day, Agent Anthony Anderson, a member of the Illinois State Police Narcotics and Currency Interdiction Task Force (NARCINT), submitted a sworn complaint for search warrant with the court seeking access to a surveilled residence affiliated with defendant. On November 2, 2016, Anderson submitted a second complaint for search warrant seeking access to a UPS Store which contained shipping items that the State believed would connect defendant to an illicit online enterprise. Anderson authored the applications attached to the complaints for search warrant that contained an identical recitation of his credentials and a chronology of his investigation into defendant up to that point.

¶ 5        According to the applications, on January 14, 2016, an informant contacted Anderson regarding a "suspicious subject" at a hotel in Joliet, Illinois who paid cash and used a purportedly fraudulent driver's license to reserve a room. Anderson witnessed a person matching the photo on the fraudulent driver's license leave the hotel in a white Cadillac Escalade registered in defendant's name. The applications further alleged that defendant's Cadillac was registered to a private mailbox, a tactic often utilized to maintain anonymity while engaged in criminal activity. A search revealed defendant had two active investigations by the Drug Enforcement Agency (DEA) and Homeland Security Investigations (HSI) involving the illegal importation of cutting

2

agents and narcotics. A source from one of these investigations relayed to Anderson that defendant operated a website with the domain name "princeincense.com" to peddle and manufacture illicit substances.

¶ 6 The applications next averred that in January and February 2016, State agents conducted two trash pulls at a residence associated with defendant and found shipping labels from "Prince Incense & Candle" with ledgers, shipping documents, and packaging suggestive of drug paraphernalia, including, among other things, heroin and cocaine purity test kits. An investigation into defendant's business banking records revealed numerous money orders addressed to "princeincense.com." In addition, Anderson placed the first of several recorded phone calls with defendant on June 14, 2016. His goal was to purchase product from defendant's website. During their conversation, defendant asked if Anderson was looking to purchase "dry"—a term based on Anderson's training and experience to be associated with cocaine—or "wet" which is a slang term for heroin. Between June and September 2016, Anderson and defendant set up and carried out several transactions for substances listed on the "princeincense.com" website.

¶ 7 The application attached to the November 2, 2016, complaint for search warrant supplementally alleged that members of NARCINT recovered drug paraphernalia and drug manufacturing equipment at defendant's residence during the execution of the first search warrant. At this time, defendant was found inside the residence and taken into custody. The complaint concludes that in late October, while defendant was out of jail on bond, he contacted a local UPS Store and unsuccessfully requested the deletion of shipping records.

¶ 8 At defendant's arraignment on December 2, 2016, the court ordered the State to comply with discovery pursuant to Supreme Court Rule 412 by December 9, 2016. Ill. S. Ct. R. 412 (eff.

3

Oct. 1, 1971). On December 23, 2016, the State filed its written discovery, which included that its list of witnesses remained "PENDING." Defendant filed a motion to compel, and after a hearing on January 4, 2017, the court's docket entry indicated the State tendered its discovery. Thereafter, between January and November 2017, the State supplemented its discovery six times, tendering search warrants, numerous police investigative reports, and the complaints for search warrant that included the applications penned by Anderson.

¶ 9 On March 2, 2018, defendant moved to suppress any evidence procured during the execution of the October 19 and November 2, 2016, search warrants. Defendant's motion argued, in part, that the applications for the search warrant complaints were based on conclusory allegations and circumstantial evidence suggesting defendant was the anonymous proprietor of the "princeincense.com" website, which was insufficient probable cause. Defendant acknowledged Anderson's investigation and credentials, arguing "[Anderson] relied entirely on his own personal professional opinion, citing his law-enforcement training and experience, to surmise that these products were in-fact being distributed for use as narcotics paraphernalia." In April, the State filed a 23-page response that supported the legitimacy of Anderson's investigation. The State then supplemented its discovery a seventh and eighth time on May 23 and August 21, 2018, respectively. Thereafter, defendant filed a supplement to his motion to suppress challenging the validity of the tape recording wherein defendant referenced the terms "wet" and "dry" to Anderson. Per the supplement, Anderson was the only individual to use these "slang terms" during the phone conversation. The State filed a motion to strike defendant's supplement, and after hearing arguments, the court entered an order denying the State's motion on March 28, 2019. The court thereafter denied the State's motion to reconsider.

¶ 10    During the August 29, 2019, hearing on defendant's motion to suppress, defendant's counsel identified Anderson by name and contested the methods and constitutionality of his investigation. At the conclusion of the arguments, the parties discussed preliminarily setting the matter for trial. The State specifically referenced the need to contact and coordinate with Anderson, who at that time was no longer part of the NARCINT task force. The court denied defendant's motion, and a trial setting was set for September.

¶ 11    After four more continuances the court, on its own motion, suspended proceedings due to the COVID-19 pandemic. Defendant moved to advance the matter for status on June 4, 2020. Between June 2020 and August 2021, the parties were granted twelve continuances. Eventually, the court set trial for August 16, 2021. Ten days prior, the State filed a written motion to continue citing Anderson's unavailability. Within the motion, the State characterized Anderson as a "necessary witness" and explained defendant's counsel agreed to the continuance. After granting the State's motion and rescheduling the trial date for November 8, 2021, the State again filed a written motion to continue citing the prosecuting attorney's need to attend to an ill out-of-state relative. Over defendant's objection, the court granted the State's motion. On February 7, 2022, after another pair of continuances, the court granted one of defendant's counsel's motion to withdraw and reset the matter for trial.

¶ 12    The State failed to supplement the list of witnesses it intended to call at trial until the afternoon of Friday, April 29, 2022. The record reflects that the State appeared before the court 62 times between its tender of initial written discovery indicating its witness list was "PENDING" and its tender of a completed witness list. A total of 2018 days, approximately five years and six months, elapsed between defendant receiving his charges and the State providing its list. More than six years had passed since Anderson began his investigation into defendant.

5

Among other witnesses, the April 29, 2022, filing indicated that the State intended to call two experts at trial, one of which was Anderson. Defendant filed a motion *in limine* to bar the State's expert witnesses on May 2, 2022, with the trial set to begin the following day.

¶ 13 On the morning of May 3, 2022, the court granted defendant's motion *in limine* and denied the State's motion to continue. The State represented that it had prior oral agreements, understandings, and anticipated stipulations with defendant's withdrawn counsel concerning the belatedly disclosed witnesses. The court inquired what the State disclosed concerning its expert witnesses. The State responded that Anderson and "his opinions about the cutting agent and other things related to use of products in the drug trade" were informally disclosed. The court provided an opportunity for the State to solemnify these representations by filing an affidavit regarding its discussions with defendant's withdrawn counsel before the afternoon trial session. The State failed to do so. Defendant's remaining counsel denied any agreement was ever made.

¶ 14 The parties reconvened that afternoon and the court denied the State's request for a continuance to file a written motion concerning any purported prior oral agreements. The court found that the disclosure of expert witnesses two business days prior to trial was untimely and prejudicial to defendant. Up to April 29, 2022, no expert opinions had been disclosed nor curriculum vitae tendered. In granting defendant's motion to bar the State's expert testimony, the court found that "any witness not disclosed within the seven days preceding [the] trial date is barred, and any opinion not disclosed within [the] seven days preceding the trial date is also barred" and clarified "[a]ny expert opinion is barred." The circuit court also denied the State's request for leave to file a motion to reconsider. According to the court, the State was afforded additional time to prepare whatever arguments and motions were needed following the morning trial session and prior to the afternoon trial session.

6

¶ 15         The court's sanction conceivably barred all State witnesses from testifying, as the first disclosure of any State witness came from the April 29, 2022, filing. However, the court later indicated an exception to its widespread sanction. At the start of the proceedings the following day, the State informed the court of its intention to call an evidence technician involved with defendant's investigation, but per the court's procedure, the witness was unavailable due to being a close COVID-19 contact. Defendant's counsel argued that the court's sanction barred the witness from testifying. After the State's explanation as to the extent of the witness's involvement in the investigation, the court stated it would allow the evidence technician to testify because the witness authored reports in the record and therefore was "disclosed to the defense *** in a substantial fashion." Based on the court's view, the witness's reports were known and did not come as a surprise to defendant. This did "not disturb the Court's ruling as to the [bar of] expert witness testimony." The State sought a continuance based on the technician's unavailability which the court granted. Prior to reconvening, the State filed a motion to reconsider the court's sanction.

¶ 16         On June 22, 2022, the court heard arguments on the State's motion to reconsider and took the matter under advisement. The next day, the court denied the State's motion and upheld its sanction pursuant to Illinois Supreme Court Rule 415(g)(i). Ill. S. Ct. R. 415(g)(i) (eff. Oct. 1, 1971). In issuing its ruling, the court explained that the sanction was not meant to be punitive, but rather (1) to prevent surprise and prejudice to the defense after disclosures occurred six years into the case and days before trial, (2) to disallow the State's late motion to continue on the afternoon of trial to circumvent the court's discovery sanction, (3) to establish that the court cannot find a disclosure this tardy acceptable when the witnesses and issues were known to the State at the time of charging, and (4) to prevent another continuance.

7

¶ 17    The State timely filed a notice of appeal and a certificate of substantial impairment on July 13, 2022, which asserted the court's sanction impairs its ability to proceed with the case.

¶ 18                                    II. ANALYSIS

¶ 19    The State appeals the circuit court's ruling that barred expert testimony as a discovery sanction. The State does not take aim at the entirety of this sanction; rather, the State limits its argument to the assertion that by barring one of the State's two expert witnesses, Anderson, the circuit court has abused its discretion. In support of its argument, the State claims that this sanction was too extreme when the preferred alternative, a continuance, was available to the court. Further, because defendant knew of Anderson's involvement in the case, it would not prejudice defendant nor should it come as a surprise to allow Anderson to testify.

¶ 20    Illinois Supreme Court Rule 412 governs disclosures to the accused. Ill. S. Ct. R. 412 (eff. Oct. 1, 1971). The rule enumerates several categories of disclosures that the State must tender to the defense, including the names and last known addresses of the State's anticipated witnesses, and as for the State's identified experts, any reports, statements, and certain indicia of its expert's qualifications. See *id.* § (a)(i), (iv). Compliance with discovery is mandatory. *People v. Robinson*, 157 Ill. 2d 68, 78 (1993). Illinois Supreme Court Rule 415 imposes a continuing duty upon the State to disclose and "promptly notify the other party" of additional material or information subject to disclosure. Ill. S. Ct. R. 415(b) (eff. Oct. 1, 1971). The rule also empowers the circuit court to regulate discovery. See *id.* If the State has failed to comply with its disclosure obligation, Rule 415 allows a court to sanction the State by "order[ing] [the State] to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." *Id.* § (g)(i). Indeed, "[i]f the State fails to comply with its discovery obligations under Rule 412," the court

8

may impose a sanction it finds appropriate "to eliminate any unfair prejudice to the defendant." *People v. Calloway*, 2019 IL App (1st) 160983, ¶ 68.

¶ 21   A discovery sanction must be affirmed if it was narrowly tailored and did not prevent the State from prosecuting the defendant with "evidence apart from that which was barred under the sanction." *People v. Kladis*, 2011 IL 110920, ¶ 45. We review a court's imposition of discovery sanctions under an abuse of discretion standard. See *People v. Newberry*, 166 Ill. 2d 310, 318 (1995). A court has abused its discretion only where its decision is "arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court." *People v. Ramsey*, 239 Ill. 2d 342, 429 (2010). However, on appeal, we closely scrutinize a court's decision to exclude evidence. See *People v. White*, 257 Ill. App. 3d 405, 414 (1993). A court should fashion a sanction to meet the circumstances of the case. *People v. Damico*, 309 Ill. App. 3d 203, 212 (1999). In determining whether witness exclusion is the appropriate discovery sanction, courts consider (1) the effectiveness of a less severe sanction, (2) the materiality of the witness's proposed testimony to the outcome of the case, (3) the prejudice to the other party caused by the testimony, and (4) the evidence of bad faith from the discovery violation. *People v. Scott*, 339 Ill. App. 3d 565, 573 (2003). We have upheld Rule 415 sanctions even in the absence of a bad faith showing. See, *e.g.*, *People v. Koutsakis*, 255 Ill. App. 3d 306, 312, 314 (1993) (affirming Rule 415 sanction limiting police officers' testimony despite no showing that the officers' recorded radio transmissions were destroyed in bad faith).

¶ 22   Here, the circuit court's discovery sanction barring the State's expert witnesses explores the bounds of a court's ability to impose the "most severe sanction available" pursuant to Rule 415. See *Scott*, 339 Ill. App. 3d at 567, 574, 578 (finding the court's bar of defendant's disclosed witness was reversible error when a continuance would have cured any prejudice the State

9

suffered, despite the disclosure coming the same day of trial). Such a measure should be reserved for the "most extreme situations." *Id.* at 573. Despite the extreme nature of the State's delay in disclosing its witness list, see *supra*, ¶ 12, we find that the court abused its discretion by barring Anderson from testifying when a continuance would have cured any surprise or prejudice defendant endured by Anderson's late designation as an expert witness.

¶ 23    The first factor we review to determine the suitability of exclusion is the effectiveness of a less severe sanction. The State argues that a continuance was a less severe measure that was available to the court and would have cured any prejudice defendant endured from the State's failure to disclose Anderson as a potential expert witness at an earlier date. To support this contention, the State cites *People v. Hawkins*, 235 Ill. App. 3d 39, 43 (1992), arguing that the bar of Anderson's expert testimony is too harsh a sanction. In *Hawkins*, the appellate court found that the circuit court's exclusion of 104 pages of documents belatedly disclosed in the State's supplemental written discovery was an abuse of discretion. *Id.* at 40, 43. The court explained that the exclusion of evidence is not a favored sanction because "it does not contribute to the goal of truth seeking," and a continuance is preferred if it effectively protects the defendant "from surprise or prejudice." *Id.* at 41. Excluding evidence is a "last resort," only to be used where a continuance would be ineffective. *Id.* Granting a continuance would have been just as effective without "decreasing the equality [to the State] necessary for a fair trial." *Id.* at 43.

¶ 24    A continuance here would have cured any surprise and prejudice to defendant while allowing him the opportunity to adequately fashion his defense. Defendant argues that granting another continuance, after eight prior trial continuances, would be tantamount to the State facing no sanction at all. Justice Geiger raised a similar concern in his dissent to the State's central case on appeal. See *People v. Rubino*, 305 Ill. App. 3d 85, 91 (1999) (Geiger, J., dissenting)

10

(cautioning that a continuance does not serve as a remedy and does not hold the State accountable for its discovery violations). This contention loses sight of the ultimate truth-seeking goal, and not the punitive measures, that discovery sanctions are meant to accomplish. See, *e.g.*, *People v. Houser*, 305 Ill. App. 3d 384, 391 (1999) (holding the preclusion of defendant's necessity defense was reversible error because it did not promote the search for truth and the court did not sufficiently consider alternative sanctions).

¶ 25        The State's failure to comply with discovery over such an extended period is inexcusable. Further, we are reluctant to intrude on the circuit court's discernment in fashioning the appropriate sanction for discovery violations; a power explicitly granted to the court by our legislature. See Ill. S. Ct. R. 415(g)(i) (eff. Oct. 1, 1971). However, after reviewing the record, we find that excluding Anderson as an expert witness was an abuse of discretion. Because defendant was in possession of the applications for the search warrant complaints, he was aware of Anderson's credentials and investigation at all germane times leading up to trial. Furthermore, defendant knew that the State planned to call Anderson as a witness, especially after it moved to continue the trial based on his unavailability. In addition, a brief continuance would allow defendant the opportunity to retain his own expert to examine Anderson's credentials and investigation. As the State points out on appeal, defendant sought, in the alternative, this relief within his motion *in limine*. In line with *Hawkins*, we find that a continuance better aligns with the goal of truth-seeking and presents an effective alternative to excluding Anderson as a witness. *Hawkins*, 235 Ill. App. 3d at 41-42.

¶ 26        The second factor we consider in determining the appropriateness of the court's exclusionary sanction is the materiality of Anderson's expected testimony. Defendant argues the State's failure to demonstrate why Anderson's testimony is crucial to its case makes a materiality

11

determination impossible. In contrast, the record reveals Anderson's expected testimony is demonstrably material. On August 29, 2019, after the court denied defendant's motion to suppress and defendant's counsel requested the matter be set for trial, the State's sole concern was coordinating with Anderson, who had since left the NARCINT taskforce. The State later characterized Anderson as a "necessary witness" in a motion to continue trial due to his unavailability. During the hearing on defendant's motion *in limine*, the State categorized its experts' testimony as "critical to our case" and "incredibly important evidence." The State filed a certificate of substantial impairment on July 13, 2022. Beyond these actions, the materiality of Anderson's anticipated testimony may be inferred as the case agent who initiated and carried out the criminal investigation into defendant. His expert opinion on the drug trade as it applies to this case, namely the materials and terms discussed during his purported phone calls with defendant, may be used to substantiate and contextualize defendant's multiple counts of unlawful sale of drug paraphernalia charges. See 720 ILCS 600/3(a) (West 2016).

¶ 27    The third factor we consider is the prejudice defendant would endure if Anderson's testimony were admitted. To argue that factors minimizing defendant's surprise and prejudice from a discovery delay are present here, the State analogizes this matter to the Second District's decision in *People v. Rubino*, 305 Ill. App. 3d 85, 88-89 (1999). In *Rubino*, the appellate court found that the circuit court abused its discretion when excluding a laboratory report and the testimony of the two expert witnesses who prepared the report as a sanction for the State's failure to disclose the report in discovery. *Id.* at 86, 89. The court held a continuance was preferable to exclusion, as that would afford the defendants an adequate opportunity to inspect and challenge the laboratory report. *Id.* at 89.

12

¶ 28    On appeal, defendant contends that *Rubino* is inapposite, focusing on the differences in the length of delay between the State's discovery violations. We agree that the State's supportive case law features less significant discovery delays than the State's discovery violation here. In *Hawkins*, fewer than seven months elapsed from defendant's charges to the State's supplemental discovery filing. See *Hawkins*, 235 Ill. App. 3d at 40-41. In *Rubino*, fewer than eleven months elapsed between defendants' discovery request for the laboratory report and the State's requested leave to tender that report. See *Rubino*, 305 Ill. App. 3d at 86. Here, more than 64 months elapsed from the court ordered disclosure deadline to when the State tendered any witnesses it intended to call at trial.

¶ 29    Notwithstanding the longer delay here than in *Rubino*, the dispositive similarities these cases share are unavoidable. The *Rubino* court held the sanction of exclusion less appropriate where the withheld material is produced before trial. *Id.* at 88. The court also found that any prejudice from the length of delay was negated where the defendants were not in custody during the period of the State's noncompliance with discovery. See *id.* Both these circumstances occurred here. The State's belated disclosure was made before defendant's trial, albeit by mere days; during the five and a half years in which the State failed to disclose its witness list, defendant was not incarcerated. Moreover, both parties sought several pretrial continuances. Indeed, defendant agreed to the State's continuance request due to Anderson's unavailability. Defendant also did not demand a speedy trial. A comparable confluence of factors was sufficient for the *Rubino* court to find that the defendants' prejudice was minimized "because time was not of the essence" as both sides requested pretrial continuances, were not in custody, and defendants' speedy trial demands were made only after the evidence was excluded by the trial

13

court. *Id.* Equally important, as emphasized in *Hawkins* and *Rubino,* courts disfavor the exclusion of evidence when a continuance would cure surprise and prejudice.

¶ 30    Defendant asserts that Anderson's late disclosure deprived him of the opportunity to adequately prepare for trial and engage in the time-consuming process that accompanies vetting an expert opinion. Defendant adds that proceeding to trial without the opportunity to vet Anderson's opinions would result in severe prejudice. While we do not disagree, defendant fails to reconcile how a continuance would not afford him this opportunity. Similarly, he fails to address why this less draconian alternative would not ameliorate any prejudice from the State's discovery violation.

¶ 31    We reiterate that the applications for the search warrant complaints set forth Anderson's investigation, his credentials, and how he utilized his expertise in the drug trade to discern that defendant's ostensibly innocuous terms amounted to something more. The defense agreed to the State's August 16, 2021, requested continuance from an earlier trial date, which was based on Anderson's unavailability. This, at the very least, demonstrates defendant's former counsel knew Anderson was a "necessary witness" and would be involved in defendant's trial to some extent. Defendant's previous knowledge of Anderson's detailed involvement and expert opinions lessens the surprise flowing from the late disclosure of his expert testimony and supports our conclusion that any prejudice to the defense would be ameliorated by a continuance.

¶ 32    Defendant asserts that because the court stated its intention that the sanction was not punitive, the holding in *Rubino* does not apply here. *Id.* at 87-88. However, notwithstanding the circuit court's stated intention, the exclusion of Anderson's testimony resulted in a punitive effect on the State's case. As the court noted, one of its reasons for imposing this sanction was to "establish the precedent for this particular Court and courtroom that this Court cannot find

14

acceptable a disclosure of witnesses six years into a case and four days prior to trial where the issue and people were known to the State at the time of charging." But a sanction must be narrowly tailored to the goal of truth seeking. This is precisely why the exclusion of evidence is not favored in this context. *Hawkins*, 235 Ill. App. 3d at 41. It is not the punitive intention, but the punitive effect of Rule 415 sanctions that gives pause and can run afoul the ultimate goal of discovery. See *Rubino*, 305 Ill. App. 3d at 88 ("[T]he trial court improperly chose exclusion for its punitive effect.").

¶ 33        The fourth and final factor we consider in determining the merits of the court's sanction is whether the record indicates the State's discovery violation was in bad faith. The record does not support that the State's discovery violation was in bad faith as it pertains to the belated disclosure of Anderson as an expert witness. Defendant argues that the State's dilatory conduct in disclosing any witness and its unsubstantiated representations that it had an informal agreement with defendant's former counsel, demonstrates bad faith. We disagree. The record reflects that defendant knew Anderson's credentials and the factual basis of his investigation as early as January 2017. At the latest, defendant directly demonstrated his knowledge of Anderson's investigation by challenging its validity through his March 2, 2018, motion to suppress. Further, as explained above, defendant agreed to the State's motion to continue based on Anderson's unavailability. The record does not support that the State delayed identifying Anderson as a witness willfully or that it was motivated by gamesmanship. See *Taylor v. Illinois*, 484 U.S. 400, 415 (1988).

¶ 34        In summary, the court's discovery sanction resulted in the wholesale exclusion of the State's disclosed witnesses. Incident to this ruling, Anderson was barred from testifying as an expert witness. Because his involvement in defendant's case and his expected testimony,

including his qualifications, were known by defendant pretrial and a continuance would remedy any prejudice to defendant by his belated disclosure as an expert, we find the circuit court's Rule 415 exclusionary sanction was an abuse of discretion. Ill. S. Ct. R. 415(g)(i) (eff. Oct. 1, 1971).

¶ 35                                    III. CONCLUSION

¶ 36        We reverse the circuit court's order barring Anderson's expert testimony and remand this cause to the circuit court of Will County for further proceedings consistent with this order.

¶ 37        Reversed and remanded.